UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ST. JUDE MEDICAL S.C., INC., a Minnesota corporation, | Civil File No. 12-cv-00621 (ADM/AJB) |
| Plaintiff, | |
| v. | |
| BIOSENSE WEBSTER, INC., a California corporation, JOHNSON & JOHNSON, a New Jersey corporation, and JOSE B. DE CASTRO, an individual, | |
| Defendants. | |

---

### ST. JUDE MEDICAL S.C., INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY
_____

On October 7, 2013, a unanimous Minnesota Court of Appeals rejected every argument Defendants recycle here, and expressly affirmed the validity of SJM's agreements for a specified term of employment. *See St. Jude Medical S.C., Inc. v. Biosense Webster, Inc.*, Court File No. A13-0414, 2013 WL 5508389, at *2 (Minn. App. Oct. 7, 2013) ("the *Jackson* case"). The court held as a matter of law that term contracts are not restrictive covenants because they "do not restrict an employee's freedom of employment following the employee's termination." *Id.*

While that appellate decision is dispositive (as it resolved the *same* arguments made by the *same* parties and the *same* attorneys regarding the *identical* term provisions), it is no outlier. As noted in SJM's opening brief, Minnesota courts have consistently reached the same conclusion.

In another identical case between these same parties, Ramsey County District Judge Elena T. Ostby granted SJM complete summary judgment on liability, holding that SJM's term contracts are unambiguous, valid, and enforceable as a matter of law. (Docket No. 152, Ex. 3 ("the *Sterling* case").) Judge Ostby then squarely rejected Defendants' reconsideration request (Delaney Dec. Ex. A), and chided them for talking "out of both sides of their mouth." (*Id.*, Ex. C.) The court observed that the Court of Appeals just affirmed Judge John Van de North's grant of complete summary judgment in a case "substantially similar to the case at bar." (*Id.*)

Because Biosense and Johnson & Johnson (collectively, "Biosense") are constantly seeking to relitigate exactly the same arguments and issues they have lost repeatedly, SJM's most direct response is to refer this Court to the summary-judgment order in the *Jackson* case (Docket No. 152, Ex. 2), the Court of Appeals unanimous decision affirming that order, and the summary-judgment order in the *Sterling* case (*id.*, Ex. 3). SJM will, however, provide brief responses to some of the principal arguments Defendants throw up to evade a liability finding.

**I.    There is no conflict of laws for this Court to resolve.**

Defendants urge the Court to look past the clear and unambiguous Minnesota choice-of-law clause[1] in de Castro's contract and instead apply California law. But this Court need not undertake a *Milkovich* choice-of-law analysis, as there is no conflict to

---

[1] "Minnesota traditionally enforces parties' contractual choice of law provisions." *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. App. 1994). Plainly, the validity and enforceability of the contract must be determined under Minnesota law, and de Castro, who is a sophisticated sales representative who sells and supports complex medical technologies, is hardly in a position to challenge the unambiguous provision.

2

resolve. *See Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 46 (Minn. 1979) ("Before applying the [choice-of-law] analysis, the court must first determine whether. . . there is an actual conflict.").

The California legislature has passed several statutory provisions that plainly recognize term agreements and the fact that they alter the traditional "at will" employment status. First, section 2925 of the California Labor Code provides: "An employment, *having no specified term*, may be terminated at the will of either party on notice to the other. Employment for a specified term means employment for a period greater than one month." Cal. Labor Code. § 2922 (emphasis added). Second, section 2925 of the Labor Code provides that "an employment agreement for a specified term may be terminated by the employee at any time only upon a "wilful or permanent breach of the obligations of his employer to him as an employee." *Id.* § 2925; *see also id.* § 2924 (defining employer rights to terminate).

California courts have held that these provisions mean that, where there is a contract for a specified term of employment, the parties may no longer terminate the relationship at their whim without consequence. *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999) ("Under this statute, an employee's term of employment, *when not otherwise specified in an employment contract* . . . is considered a term that may be terminated at will by either party.") (emphasis added).[2]

---

[2] *See also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988) (*en banc*) ("Labor Code section 2922 establishes a presumption of at-will employment *if* the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination.") (emphasis added).

3

One court reasoned succinctly that it would be illogical to allow the parties to agree on a specified term, but still allow them to cancel the agreement before the end of the term without consequence:

> *Such a right would dilute the enforceability of the contract if it could be terminated before the end of its term.* What would be the benefit of a specified term if the employee could be discharged prior to the end of that term, notwithstanding the employee's compliance with the contract's provisions?

*Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal. App. 4th 32, 58 (2000) (emphasis added).

Even more on point, the Ninth Circuit has interpreted the Labor Code to allow tortious-interference claims against companies who solicit personnel known to be operating under term agreements. *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105-07 (9th Cir. 2007). This case ends the debate.

Defendants ignore all of this. Instead, they refer to the inapposite California Business and Professional Code, which provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business or any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. To read this provision to prohibit term contracts (which no California court appears to have done) would effectively read sections 2922, 2924, and 2925 out of existence and improperly conflate term contracts with post-employment restrictive covenants.

4

In any event, SJM does not seek to restrain de Castro from engaging in his trade or force him to return to SJM.[3] SJM is only calling on him to pay money damages for breaching a contract he freely entered into in exchange for substantial guaranteed compensation and an added measure of job security.[4] Simply put, then, de Castro's contract is valid in Minnesota and in California.

**II.     There are no issues of fact regarding the validity of SJM's term agreements.**

Defendants also claim that the enforceability of SJM's term agreements is a fact question that precludes summary judgment. Defendants ignore, though, that questions regarding contractual validity are legal questions for the Court, not the jury. *See, e.g., Steele v. McCargo*, 260 F.2d 753, 758 (8th Cir. 1958) ("[T]he construction of a contract and its legal effect are questions of law for the court.").

Defendants will undoubtedly stress that two SJM PowerPoint presentations indicate that one of the many benefits of term agreements is to "lock in" employees from competitors. This is precisely the same argument Defendants have been recycling for

---

[3] This fact alone distinguishes the California cases Defendants rely on. *See, e.g., Steinberg Moorad & Dunn Inc. v. Dunn*, 136 Fed. Appx. 6 (9th Cir. 2005) ("When an employee leaves, be it before the term of employment has ended or not, section 16600 prohibits the employer from preventing that employee from pursuing his trade.").

[4] Because there is no conflict between Minnesota and California law, SJM will not brief the *Milkovich* factors. Suffice-it-to-say, however, that SJM is a Minnesota corporation and a wholly-owned subsidiary of St. Jude Medical, Inc., a multi-national corporation headquartered in St. Paul, Minnesota. The company has an obvious interest in assuring that its employment agreements are interpreted and applied with consistency, and that the rights of the parties to the agreement are not determined by the unpredictable domicile of the company that chooses to intentionally procure their breach. And in *Jackson*, of course, the Court of Appeals undertook a *Milkovich* analysis and concluded that Minnesota law applies under virtually the same circumstances.

5

over three years since the outset of the *Jackson* litigation—which has uniformly and consistently been rejected.

In any event, the PowerPoints merely state the obvious: that one who agrees to work for a company for a specified term cannot also work for another company.[5] This is not a sign of an unenforceable contract, but a reflection of established common law. *See, e.g., Rehabilitation Specialists, Inc. v. Koerning*, 404 N.W.2d 301 (Minn. App. 1987) ("An employee's duty of loyalty prohibits her from soliciting the employer's customers for herself, or from otherwise competing with her employer, while she is employed."); *Sanitary Farm Dairies, Inc. v. Wolf*, 261 Minn. 166, 168-169 (1961) (same).

The Minnesota Court of Appeals recently made this *exact* point in rejecting Defendants' same argument about anti-competitive intent and effects in *Jackson*: "Similar to the employee's situation in *Becker*, the district court's holding that the employment agreement could be enforced only by damages did not restrict Jackson's future employment, which she in fact pursued and obtained with Biosense, a competitor of SJM. Thus, we conclude that the district court did not err by determining that the employment agreement is not a restrictive covenant, but rather an employment contract

---

[5] Defendants will also no doubt ignore the other parts of the PowerPoints identifying the reciprocal benefits to the employee, namely, a "locked in" commission structure and limitations on the employer's work force flexibility by altering the "at will" relationship and confirming that the employee can be terminated only "for cause." This is not a restrictive covenant; it simply confirms that both parties agree to abide by their commitment to maintain the employment relationship for the specified period of time.

6

for a fixed term, which is enforceable by damages."[6] 2013 WL 5508389, at *2. Defendants are collaterally estopped from relitigating the issue here.[7]

To avoid collateral estoppel, Defendants suggest that *Jackson* was somehow different because the parties there stipulated that the court could interpret the term provision as a matter of law. But that is no different from what the court will do here. And of course, Defendants acknowledged in *Jackson* that SJM's term agreement is unambiguous. They cannot change course from their judicial admission here.

If ever there were a case to apply collateral estoppel, this is it. A contrary ruling from this Court regarding the validity of SJM's term agreements would create an anomaly, with the Minnesota Court of Appeals expressly upholding SJM's term contracts, and this Court voiding them. This is exactly why the Court should estop Defendants from re-litigating the same core issues .

Finally, in response to Judge Boylan ordering the company to produce its own term contracts, Biosense produced no fewer than four different types of contracts, which include penalties where the employee resigns before the end of term. (Delaney Dec. Ex.

---

[6] Defendants made the same argument to the Court of Appeals in *Jackson* that SJM's term agreements have an anti-competitive intent and should therefore be treated as restrictive covenants. (Delaney Dec. Ex. D). The court rejected that argument.

[7] This Court has already recognized that this case involves the same issues and parties. 2012 WL 1576141, at *5. Defendants cannot serially reargue the same issue and avoid collateral estoppel simply by hiring a different employee and suggesting that the parties are no longer the same. Indeed, as the defense agreement itself states, Biosense is completely controlling de Castro's defense, and he has not made any arguments different than those that were raised and rejected by Judge Van de North (and the Court of Appeals) in *Jackson* and by Judge Ostby in *Sterling*.

E.) It is clear, then, that SJM's legitimate contracts are not unique, and should be enforced like all other term agreements that have been consistently validated by numerous courts time and again.

### III. Biosense intentionally procured de Castro's breach without any legitimate justification.

Biosense lastly claims there are issues of fact regarding whether it intentionally procured de Castro's breach and whether it had justification for doing so. Biosense is wrong on both counts.

As to the first issue, the case law Biosense cites only highlights the infirmity of its argument. For example, Biosense refers this Court to *United Aircraft Corp. v. Boreen*, 413 F.2d 694, 699 (3d Cir. 1969),[8] for the proposition that, "[w]hen employees elect to leave a company, the intentional procurement of breach element cannot be established." But *Boreen* was premised on the fact that "all defendants were employed at will," *id.*, which of course is a directly opposite circumstance from that presented here and reinforces SJM's point: a company cannot offer employment to someone under a term agreement and then, when that person resigns before the term, claim it had no role whatever in procuring the breach.

Here, it is undisputed that: (1) Biosense had knowledge of de Castro's unexpired term agreement; (2) SJM had sued Biosense twice before for exactly same improper interference with contract; (3) Judge Van de North had already granted SJM summary

---

[8] Defendants incorrectly cite *Boreen* as being binding precedent from the Eighth Circuit. The case, however, is from the Third Circuit.

8

judgment on liability in the *Jackson* case before Biosense hired de Castro (and Biosense even told de Castro he could back out in light of that order);[9] and (4) Biosense agreed to offer de Castro a complete defense in the lawsuit it knew SJM would commence to enforce its contract rights. Biosense clearly procured the breach, and any suggestion to the contrary is to flee from the record.

As to the second issue, Biosense claims some blanket competitor's privilege justifies its interference. But multiple courts have rejected this same argument. The Minnesota Supreme Court's decision in *Sorenson v. Chevrolet Motor Co.*, 214 N.W. 754 (Minn. 1927), is dispositive. There, the court stated: "The right of competition is not the right to destroy contract rights." *Id.* at 756.

Biosense has no response to *Sorenson*, other than to say it's an older case. *Sorenson*, though, remains good law, and the Minnesota Court of Appeals recently re-affirmed that there is no competitor's privilege that can be invoked to justify Biosense's tortious interference with contract. *Jackson*, 2013 WL 5508389, at *4.

## **CONCLUSION**

For the foregoing reasons, this Court should reject Defendants' arguments and grant summary judgment to SJM on its breach-of-contract claim against de Castro and its tortious-interference claim against Biosense.

---

[9] Defendants are constantly mischaracterizing the orders from the *Jackson* litigation. At every step, the orders recognized that contracts for a specified term of employment could be enforced by money damages, but not by injunctive relief. For this reason, SJM asked Defendants in this case to admit the contents of those orders. (Docket No. 158-4.) Defendants stated that the orders speak for themselves and that the requests called for "legal conclusions." SJM agrees, and encourages the Court to read the orders because they clearly demonstrate why collateral estoppel is warranted.

**BASSFORD REMELE**
*A Professional Association*

Dated: October 17, 2013    By s/ Edward F. Fox
    Edward F. Fox (License #003132X)
    Carrie L. Hund (License #277149)
    Mark R. Bradford (License #335940)
    Jeffrey R. Mulder (License #0389205)
    Nicole A. Delaney (License # 0390102)
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota  55402-3707
Telephone:   (612) 333-3000
Facsimile:     (612) 333-8829
efox@bassford.com
chund@bassford.com
mbradford@bassford.com
jmulder@bassford.com
ndelaney@bassford.com

*Attorneys for Plaintiff St. Jude Medical S.C., Inc.*