## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

St. Jude Medical, S.C., Inc.,

           Plaintiff,

    v.

Biosense Webster, Inc., Johnson & Johnson,
and Jose B. de Castro,

           Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-621 ADM/TNL

---

Edward F. Fox, Esq., Carrie L. Hund, Esq., Mark R. Bradford, Esq., Jeffrey R. Mulder, Esq., and Nicole A. Delaney, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Plaintiff.

Joseph W. Anthony, Esq., Mary L. Knoblauch, Esq., Courtland C. Merrill, Esq., and Steven C. Kerbaugh, Esq., Anthony Ostlund Baer & Louwagie, PA, Minneapolis, MN, on behalf of Defendants.

---

## I.  INTRODUCTION

On October 24, 2014, the undersigned United States District Judge heard oral argument on Plaintiff St. Jude Medical, S.C., Inc.'s ("St. Jude") Motion for Summary Judgment on Liability [Docket No. 171], Motion to Exclude Expert Testimony by Gorowsky [Docket No. 182], and Motion to Exclude Expert Testimony by Aguilar and O'Neill [Docket No. 188].[1]  The Court also heard argument on Defendants Biosense Webster, Inc., Johnson & Johnson,[2] and Jose B. de Castro's ("de Castro") Motion for Partial Summary Judgment [Docket No. 176].  For the reasons stated herein, St. Jude's Motion for Partial Summary Judgment is granted in part and

---

[1]  The parties submitted additional letter briefing on January 6 and January 13, 2014 [Docket Nos. 220, 222] requiring further consideration prior to issuance of this Order.

[2]  Biosense Webster, Inc. is a California corporation and a subsidiary of Defendant Johnson & Johnson (referred to collectively as "Biosense" herein).  Am. Compl. [Docket No. 43] ¶¶ 10-13.

denied in part, its Motion to Exclude Testimony by Gorowsky is denied, and its Motion to

Exclude Expert Testimony by Aguilar and O'Neill is granted in part and denied in part.

Defendants' Motion for Partial Summary Judgment is granted in part and denied in part.

## II.  BACKGROUND

St. Jude and Biosense both design, manufacture, and sell medical devices to doctors and

hospitals across the country.  See Am. Compl. [Docket No. 43] ¶¶ 10-13.  In particular, St. Jude

sells a cardiac imaging and mapping system known as "EnSite," designed to diagnose heart

conditions such as atrial fibrillation, a cardiac arrhythmia.  Biosense is a direct competitor of St.

Jude, and sells a competitive cardiac mapping system known as "CARTO."  Id.

Both St. Jude and Biosense employ technical and sales personnel to market and support

their cardiac mapping systems.  Medical device companies expend significant resources to train

and compensate their personnel not only because of the complex technology, but because an

employee's relationship with a physician "is a major factor" in the physician's choice of medical

products and company loyalty.  Once a physician chooses to use a particular device, that

company's sales and technical staff support the physician during each procedure involving the

device.  See id. ¶ 16.

In 2006, St. Jude hired Defendant de Castro as a Senior Field Clinical Engineer in

California.  De Castro executed a "term of years" agreement on May 1, 2006, in which he agreed

to work for St. Jude for one year.  Id. ¶ 17.  In 2007, de Castro and St. Jude renewed this

agreement for an additional year.  See id.

On January 5, 2009, St. Jude promoted de Castro to Direct Sales Representative for atrial

fibrillation products, placing him more squarely in a sales and marketing role.  Id. ¶ 18.  At the

time of the promotion, de Castro entered into a second term of years agreement, this time for a two-year term. Id. Ex. A, at 1-9 (the "Agreement"). The parties agreed Minnesota law would apply to the contract, and that any lawsuit arising in connection with the Agreement would be litigated in Minnesota. Id. ¶¶ 10.G-H. St. Jude agreed it would not terminate de Castro except "for cause" during his term of employment. Termination for cause included conduct ranging from the commission of a felony to failing to meet sales quotas. Id. ¶¶ 2, 5.

In return, de Castro agreed not to compete with St. Jude during the term of his employment.[3] De Castro agreed he would not directly or indirectly play any role in the sale of competing products to the customers he called upon for St. Jude. Id. ¶ 8. He was also bound to not disclose or use for his personal benefit any confidential information he obtained through his employment, including both technical and sales information. Id. ¶ 7. The Agreement had a "Survival of Provisions" clause, which stated these noncompetition and confidentiality clauses would "survive the termination of this Agreement for any reason." Id. ¶ 6.C.

De Castro's sales territory consisted of 13 hospitals in and around San Francisco and San Jose, California, including a customer of particular value to St. Jude.[4] In addition to his standard sales commissions, the Agreement specifically offered de Castro a bonus for achieving a certain sales revenue target with this customer. Id. Over the course of his employment for St. Jude, de

---

[3] The Agreement also includes a non-solicitation clause that applied both during and for one year after de Castro's term of employment. Agreement ¶ 9. St. Jude does not bring a claim under this clause.

[4] Due to their continuing competition in the marketplace, the parties have, likely overzealously, designated large portions of the summary judgment record as confidential. See Protective Order [Docket No. 47]. The Court has cited publicly-available information and documents when possible, but this was not possible in all instances.

Castro developed significant goodwill with the customer, including cultivating strong relationships with its physicians.

On January 3, 2011, St. Jude and de Castro extended the Agreement for an additional three-year term, until January 4, 2014. Id. Ex. A, at 10-12 ("Amendment No. 1"). Amendment No. 1 increased de Castro's compensation and narrowed his sales territory, placing a somewhat greater emphasis on key customers and physicians. See id.

In the meantime, St. Jude's competitor Biosense identified de Castro as a potential candidate for recruitment. Mark Bradford Decl. [Docket No. 152] ("Bradford Decl.") Ex. 5. During 2011, Biosense communicated with de Castro numerous times about leaving St. Jude to sell Biosense products. See id. Through the course of these discussions, Biosense learned of de Castro's Agreement and its noncompetition provision. In January 2012, Biosense sent de Castro an "Agreement to Defend" letter. Biosense stated it believed the term of years and noncompetition provisions in de Castro's employment agreement with St. Jude to be unenforceable, and agreed to furnish de Castro with counsel if St. Jude ever sued him in connection with the Agreement. Id. Ex. 10.

In February 2012, de Castro accepted the position of Territory Manager with Biosense and signed the "Agreement to Defend." See id. De Castro became responsible for sales in Biosense's San Francisco territory, which overlapped with his previous St. Jude territory and included former St. Jude customers. Id. Exs. 5, 9. On March 6, 2012, de Castro sent a resignation email to St. Jude, in which he also offered to return his laptop and other St. Jude equipment. Am. Compl. Ex. B. On the same day, Defendants filed a declaratory action in California state court seeking to invalidate the Agreement. Id. Ex. C.

Three days later, on March 9, 2012, St. Jude filed this action.  Defendants moved to dismiss the Minnesota case or transfer it to the Central District of California [Docket No. 3], while St. Jude moved to enjoin the California case [Docket No. 5].  Although the Court found injunctive relief inappropriate, it enforced the Agreement's forum selection clause and determined venue was properly in Minnesota.  Order, May 4, 2012 [Docket No. 25].  Shortly thereafter, Defendants withdrew their motion to dismiss or transfer this case.  Although they continue to dispute the effect of the forum selection clause, Defendants have proceeded to litigate in this district.  See Letter, May 29, 2012 [Docket No. 26].

This is not the first time St. Jude has filed suit against Biosense for allegedly poaching employees.  In St. Jude Med. S.C., Inc. v. Biosense Webster, Inc., No. A13-0414, 2013 WL 5508389 (Minn. Ct. App. Oct. 7, 2013) (the "Jackson" case), St. Jude filed suit against Biosense and former St. Jude employee Kristine Jackson for breach of Jackson's term of years agreement.  Judge John B. Van de North, Jr., of the Ramsey County District Court, applied Minnesota law and granted partial summary judgment in St. Jude's favor.  The court found Jackson liable as a matter of law to St. Jude for breaching her agreement, and Biosense liable for tortiously interfering with Jackson's contract.  See id.  The Minnesota Court of Appeals recently affirmed. Id.

Similarly, in St. Jude Med. S.C., Inc. v. Biosense Webster, Inc., No. 62-CV-12-1704 (Ramsey Cnty. Dist. Ct. July 16, 2013) (the "Sterling" case), St. Jude filed suit against Biosense and former St. Jude employee Natalie Sterling in connection with Sterling's term of years agreement with St. Jude.  Again, the state district court granted partial summary judgment in favor of St. Jude.  The court found Sterling liable as a matter of law for breaching her term of

years agreement, and Biosense liable for tortiously interfering with the agreement.  See Bradford

Decl. Ex. 3 (Sterling Summary Judgment Order).

In this case, St. Jude alleges six claims: (1) breach of contract against de Castro; (2)

tortious interference against Biosense; (3) breach of the Agreement and the duty of loyalty

against de Castro; (4) tortious interference with prospective economic advantage against

Defendants; (5) unjust enrichment against Biosense; and (6) civil conspiracy by Defendants.

The parties each move for partial summary judgment.  As it did in the previous state

court actions, St. Jude moves for a finding of liability as a matter of law on each of its claims.

Defendants move to dismiss several claims and to exclude lost profits damages.  In addition, St.

Jude moves to exclude the testimony of all three of Defendants' expert witnesses.

### III.  DISCUSSION

**A.  Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure states a court shall grant summary

judgment if no genuine issue as to any material fact exists and the moving party is entitled to

judgment as a matter of law.  On a motion for summary judgment, the court views the evidence

in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th

Cir. 1995).  If evidence sufficient to permit a reasonable jury to return a verdict in favor of the

nonmoving party has been presented, summary judgment is inappropriate.  Krenik v. Cnty. of Le

Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (citations omitted).  However, "the mere existence of

some alleged factual dispute between the parties is not sufficient by itself to deny summary

judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get

Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).

**B.  Choice of Law**

The Agreement's choice of law clause states: "<u>Governing Law.</u>  This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction."  Agreement ¶ 10.G.  Defendants argue the choice of law provision does not bind de Castro because he did not have the opportunity to negotiate regarding its inclusion, and because Biosense is not a party to the Agreement.  Defendants argue California law should apply because de Castro has worked only in California, Biosense is incorporated under the laws of California, and the Amended Complaint alleges conduct which primarily occurred in California.

Minnesota law will apply in this case because Defendants have not demonstrated that the choice of law clause in the Agreement should be rendered void.  Minnesota courts are "committed to the rule" that parties may agree to apply the law of a particular state to their contract.  <u>Milliken & Co. v. Eagle Packaging Co., Inc.</u>, 295 N.W.2d 377, 381 n.1 (Minn. 1980) (citation omitted).  Choice of law provisions will be enforced if they are made "in good faith and without an intent to evade the law."  <u>Medtronic, Inc. v. Gibbons</u>, 684 F.2d 565, 568 (8th Cir. 1982) (affirming enforcement of choice of law clause included in employment agreement with restrictive covenant) (quotation omitted).  Also, a choice of law clause will only be constitutionally permissible if the selected state has a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  <u>Allstate Ins. Co. v. Hague</u>, 449 U.S. 302, 313 (1981).  In the absence of an enforceable choice of law clause, a court sitting in diversity "must apply the choice of law principles of the state in which it sits."  <u>Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs.,</u>

Inc., 262 F. Supp. 2d 1004, 1010 (D. Minn. 2003).

De Castro does not demonstrate how the Agreement was executed in anything other than good faith.  In a declaration, de Castro states St. Jude presented him with a "standard form" agreement, which he signed but did not fully understand.  Jose B. de Castro Decl. [Docket No. 204].  De Castro does not contend he signed the Agreement involuntarily, he was denied the opportunity to review the Agreement, or that he attempted to negotiate the choice of law clause but was not allowed to do so.  See Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982) ("In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different.").  Nor does de Castro, a sophisticated and successful salesperson in the highly competitive medical device market, dispute St. Jude's claim that he negotiated the terms of his compensation and the sales accounts assigned to him.

Similarly, Defendants have not demonstrated how the choice of law clause reflects an intent to evade the law or deprive de Castro of due process or full faith and credit clause protections.  St. Jude is organized under the laws of Minnesota, and is wholly-owned by St. Jude Medical, Inc., a Minnesota corporation headquartered in St. Paul, Minnesota.  Am. Compl. ¶ 2. De Castro, then employed by St. Jude, agreed to apply Minnesota law to any disputes related to the Agreement, and also consented to personal jurisdiction in Minnesota.  Under such circumstances, the choice of law clause is not "arbitrary or fundamentally unfair."  Carlock v. Pillsbury Co., 719 F. Supp. 791, 807-09 (D. Minn. 1989) (applying New York law after evaluating similar considerations); see also Airtel Wireless, LLC v. Mont. Elecs. Co., Inc., 393 F. Supp. 2d 777, 783-84 (D. Minn. 2005); Jackson, 2013 WL 5508389, at *5.  Because the

choice of law clause in the Agreement is valid, no further choice of law analysis is required.

 See, e.g., Airtel, 393 F. Supp. 2d at 784.

Minnesota law will also apply to the related tortious interference claim, because "if analysis of the claims connected to [the] contract involves interpretation of the contract, then the forum will apply the contractual choice-of-law provisions to the tort claims." Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1061 (8th Cir. 2003); Warren E. Johnson Cos. v. United Brand, Inc., 735 F. Supp. 2d 1099, 1104-05 (D. Minn. 2010) (holding Eighth Circuit courts apply enforceable choice of law provisions to related tort claims).

## C.  Breach of Contract Against de Castro

St. Jude states a claim for breach of contract against de Castro not only for violating the Agreement's term of years and noncompetition clauses, but also for breaching the confidentiality clause.  In its summary judgment motion, St. Jude seeks liability as a matter of law on this claim, leaving damages to be determined at trial.  Defendants argue the Agreement's restrictive covenants are invalid and that at the very least, questions of fact exist as to the Agreement's enforceability.  In their own motion for summary judgment, Defendants seek to narrow the breach of contract claim.  Even if de Castro is liable under the Agreement, Defendants argue, St. Jude should not be allowed to seek lost profits or other consequential damages.  In addition, Defendants argue St. Jude has failed to demonstrate any material questions of fact with regard to de Castro's alleged breach of the Agreement's confidentiality provision.

### 1.  Term of Years and Noncompetition Provisions

St. Jude argues de Castro is liable as a matter of law for breach of the Agreement.  Citing several decisions, St. Jude states Minnesota courts have generally enforced fixed-term

employment contracts, even when these contracts prohibit competitive activity.  St. Jude argues

it satisfied its part of the bargain through generous compensation and added employment

protections, and de Castro undisputedly breached the Agreement by leaving St. Jude to work for

a competitor.

Defendants respond that de Castro's term of years agreement is an unenforceable

restrictive covenant.  The Agreement is simply a restrictive covenant by another name,

Defendants argue, and when viewed as a restrictive covenant the Agreement cannot be enforced.

Minnesota courts only enforce restrictive covenants to the extent they are "reasonably necessary

to protect legitimate business interests."  See Medtronic, Inc. v. Advanced Bionics Corp., 630

N.W.2d 438, 456 (Minn. Ct. App. 2001) (citing Webb Publ'g Co. v. Fosshage, 426 N.W.2d 445,

450 (Minn. Ct. App. 1988)).  Defendants argue the Agreement has no limitation as to scope and

that St. Jude lacks a legitimate business purpose for the noncompetition clause.  Regarding the

latter, Defendants also argue sales employees like de Castro are not particularly skilled or

unique, and St. Jude's only interest in enforcing the Agreement is to restrain competition, not

protect its interests.

Although the validity of fixed-term employment contracts has not often been addressed,

the Minnesota courts to reach the issue have found such contracts enforceable.  In Becker v.

Blair, 361 N.W.2d 434 (Minn. Ct. App. 1985), an employee truck driver agreed to work for his

employer for three years, and if the driver terminated his employment before then, he agreed to

pay his employer $1,500 to compensate for lost business and training costs.  When the employee

left to work for a competitor, the Minnesota Court of Appeals affirmed the enforcement of the

contract.  The court held the employee's payment of damages upon a breach of the contract "did

not restrict his future employment, which he in fact pursued through a job with another

over-the-road carrier." Id. at 436.  The court viewed the $1,500 payment as liquidated damages,

but declined to rule on whether the specific amount was reasonable.  Id.

Other Minnesota decisions have similarly enforced term of years employment

agreements.  In Guidant Sales Corp. v. George, No. 05-2890, 2006 WL 3307633, at *3 (D. Minn.

Nov. 14, 2006), defendant George, another medical device salesperson, agreed to work for the

plaintiff corporation for a three-and-a-half year term.  The plaintiff filed suit after George left to

work for a competitor, claiming George breached his term of years agreement.  Id. at *3.  The

district court declined to dismiss the claim, holding fixed-term employment contracts were

generally enforceable.  Because Guidant sought damages, and not injunctive relief, George was

not unreasonably restrained from working in the medical device industry.  Id.

Perhaps more significantly, the courts in Jackson and Sterling both followed the

precedent set in Becker.  As noted, Jackson and Sterling involved the same employers as in the

present case, and each case involved the alleged breach of a term of years contract by a St. Jude

employee.  In Jackson, the court of appeals held fixed-term employment contracts were generally

enforceable, and affirmed liability against the former St. Jude employee.  Jackson, 2013 WL

5508389, at *2.  As with Becker and George, the Jackson court agreed a term of years contract

does not function as a restrictive covenant because the contract "is enforceable by damages

only," and not injunctive relief.  Id.  The Ramsey County court in Sterling found liability against

Biosense based on the same reasoning.  Sterling, No. 62-cv-12-1704, at *11.

The Agreement is a valid contract under Minnesota law.  In broad strokes, the case at

hand is factually similar to not only Jackson and Sterling, but also Becker and George, and thus

the reasoning of those cases must guide the outcome here.  Restrictive covenants are disfavored in Minnesota, and thus scrutinized, because they <u>actually</u> restrict a person from seeking other employment in their field.  As the decisions above reasoned, that is not the case with a fixed-term employment agreement because—as de Castro did—the employee is still able to obtain employment with a competitor.

Defendants argue the risk of being sued for breach of contract effectively deters employees from freely seeking other employment, thereby restraining them.  But de Castro's own actions belie this argument.  The record demonstrates de Castro negotiated with Biosense over the course of months regarding his new position, sought substantial compensation, and prepared for the possibility of litigation.  <u>See, e.g.</u>, Bradford Decl. Exs. 5, 10, 18.  In other words, de Castro behaved consistently with a person who was contemplating a calculated breach of contract: he weighed the costs and benefits, and positioned himself to anticipate the other party's response to the breach.  As previous decisions have held, and as de Castro's own actions demonstrate, de Castro was not restrained from leaving his position at St. Jude.

Having established the general enforceability of term of years agreements, St. Jude has also demonstrated de Castro's liability as a matter of law for specifically breaching the Agreement.  A breach of contract claim has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages."  <u>Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.</u>, 703 F.3d 1104, 1107 (8th Cir. 2013) (internal quotation omitted).  St. Jude argues each of the first three elements is met, with only damages remaining for determination at trial.

The Court agrees.  Regarding the first element, Defendants offer a few arguments as to

why a valid contract did not form, but these arguments are not persuasive.  For instance, de

Castro argues he did not understand the Agreement and believed his employment to be "at will."

But as discussed, de Castro's failure to read his contract neither prevents its formation nor

excuses him from its obligations.  Gartner, 319 N.W.2d at 398.  Defendants also briefly argue

that the promises offered in the Agreement in exchange for a term of years provision were

illusory.  Namely, Defendants argue de Castro did not receive additional compensation as

compared to at-will employees, presumably meaning de Castro did not receive sufficient

consideration for submitting to the term of years provision.  Regardless of how St. Jude

compensates other employees, de Castro does not dispute receiving material compensation in

exchange for executing his particular employment contract.  So long as he received some valid

consideration, it is not for a court of law to determine whether de Castro should have bargained

for more.  Gunhus, Grinnell v. Engelstad, 413 N.W.2d 148, 153 (Minn. Ct. App. 1987)

("Minnesota follows the long-standing principle a court will not examine the adequacy of

consideration as long as something of value has passed between the parties.").  In addition,

Defendants argue St. Jude has, in the past, circumvented the security inherent in a fixed-term

employment agreement by imposing unrealistic sales quotas and then terminating an employee

for failing to meet them.  See Jones v. St. Jude Med. S.C., Inc., 823 F. Supp. 2d 699, 732-33

(S.D. Ohio 2011); Mary Knoblauch Decl. [Docket No. 202] Ex. 17 (Declaration from Jones

case).  If St. Jude had wrongfully terminated de Castro, he could have sought legal redress.  But

de Castro voluntarily resigned, and cannot litigate another employee's claim as the basis for

invalidating his contract.

      Defendants offer essentially no disagreement regarding the remaining two breach of

contract elements.  De Castro does not argue St. Jude failed to perform a condition precedent to

the Agreement.  Similarly, Defendants do not actually dispute de Castro breached the terms of

the Agreement.  As indicated above, Defendants' primary focus was on demonstrating the legal

invalidity of fixed-term employment contracts.  As a factual matter, de Castro does not dispute

that he now works for a direct competitor of St. Jude, and is engaged in selling competing

products to some of the same customers he serviced on behalf of St. Jude.  Bradford Decl. Exs.

11-12.  This conduct unambiguously violates the noncompetition provision of the Agreement.

Agreement ¶ 8.  Because no questions of fact exist with regard to the first three elements of St.

Jude's breach of contract claim, the only question remaining for trial is damages.

### 2. Confidentiality Clause

In addition to alleging breach of the term of years and noncompetition provisions, St.

Jude alleges de Castro breached the Agreement's confidentiality clause.  The Agreement states,

in relevant part:

> Employee will not disclose to a third party or use for Employee's
> personal benefit Confidential Information of SJMSC.  "Confidential
> Information" means any information used or useful in SJMSC's
> business that is not generally known outside of SJMSC . . .
> Confidential Information includes but is not limited to: . . . sales and
> marketing plans or proposals; customer information; . . . [and] price,
> accounting and cost information.

Agreement ¶ 7.B.[5]

In their motion for partial summary judgment, Defendants request dismissal of this theory

of liability.  Defendants concede de Castro sent three documents from his St. Jude email address

to his personal email address.  These documents included information on sales de Castro made

---

[5] In the Agreement, St. Jude refers to itself as "SJMSC."

14

on behalf of St. Jude, and involved at least some of the same customers de Castro now serves on behalf of Biosense.  See Nicole A. Delaney Decl. [Docket No. 128] Exs. B1-B3.  Without addressing whether these documents meet the definition of "Confidential Information," Defendants argue St. Jude has failed to demonstrate how de Castro disclosed these documents to a third party or used them for personal benefit in violation of Paragraph 7.B.  De Castro states he used the documents only to verify the proper payment of his commissions.  See Steven C. Kerbaugh Decl. [Docket No. 179] Ex. 3, at 208, 210-12.

St. Jude argues the documents de Castro emailed to himself include highly sensitive product pricing information, which would be useful to de Castro in selling similar products to Biosense customers.  In particular, St. Jude argues that shortly after de Castro joined Biosense, a key St. Jude customer purchased Biosense's CARTO system for the first time.  The timing of this transaction, St. Jude argues, "suggests" de Castro used confidential information to make the sale.

St. Jude's theory of liability based on breach of the confidentiality clause is dismissed. Although de Castro admits transferring three potentially confidential documents to his personal email account, St. Jude has not offered any evidence beyond the mere suggestion of misuse.  See Beaulieu v. Ludeman, 690 F.3d 1017, 1024 (8th Cir. 2012) ("[S]peculation and conjecture are insufficient to defeat summary judgment.") (citation omitted).  Biosense presumably hired de Castro, at least in part, because of his proven performance in selling cardiac mapping devices. The fact that de Castro sold a Biosense cardiac mapping device to a customer he knew well does not necessarily implicate the use of confidential information.

St. Jude requests additional time before entering judgment on this issue.  Shortly before

the filing of the present motions, now-retired Chief Magistrate Judge Arthur Boylan authorized

St. Jude to conduct a forensic analysis of de Castro's flash drive and personal computer.  Order,

August 28, 2013 [Docket No. 170].  Judge Boylan's August 28, 2013 Order provided a strategic

timetable by which St. Jude could review and report on the forensic analysis of de Castro's flash

drive and computer.  Id.  If St. Jude discovered evidence of misappropriation or misuse, Judge

Boylan allowed St. Jude to raise the issue in its reply brief supporting partial summary judgment.

Id. ¶ 6.  St. Jude presented no such argument, nor has St. Jude sought permission to file a

separate update with the Court.  Presumably, the forensic analysis did not uncover misuse.

Therefore, these allegations are dismissed.

### 3.  Replacement Costs

Defendants argue that should the Agreement be found valid to support holding them

liable, St. Jude's damages must be limited to the costs of replacing de Castro as an employee.

Defendants argue breach of contract claims against employees cannot include liability for lost

profits or other consequential damages because such losses are generally not foreseeable by the

employee at the time of employment.  See John D. Calamiri & Joseph M. Perillo, The Law of

Contracts § 14-19 (3d ed. 1987).  Further, Defendants argue no Minnesota decision supports an

award of lost profit damages against an employee for breach of a term of years contract, and

several other jurisdictions prohibit such an award outright.  See, e.g., Valentine Dolls, Inc. v.

McMillan, 202 N.Y.S.2d 620, 622 (N.Y. Sup. Ct. 1960).  Even if lost profits could be awarded,

Defendants urge that any such damages must be limited to only reasonably foreseeable damages.


St. Jude argues limiting its breach of contract claim to replacement costs has no basis in

Minnesota law, and St. Jude should be allowed to recover any consequential damages it can prove at trial.  Reviewing Defendants' authority, St. Jude notes Defendants have cited no Minnesota law supporting their argument, and that the cited treatises actually contradict Defendants' position.  St. Jude also argues the parties do not need to have reasonably foreseen the incurred damages for St. Jude to recover them.

Minnesota law suggests a middle path between the parties' two positions.  St. Jude is correct that Minnesota courts have never prohibited the recovery of consequential damages, including lost profits, for a breach of contract claim as long as the losses can be proven.  See, e.g., Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 267-68 (Minn. 1980) (holding lost profits generally recoverable provided they are shown with "reasonable degree of certainty and exactness"); Cnty. of Blue Earth v. Wingen, 684 N.W.2d 919, 924 (Minn. Ct. App. 2004) (affirming general recovery of consequential damages); DeRosier v. Utility Sys. of Am., Inc., 780 N.W.2d 1, 4-5 (Minn. Ct. App. 2010) (accord).  The Court has not located any Minnesota decision declining to apply this general rule to the employment context.  See B&Y Metal Painting, Inc. v. Ball, 279 N.W.2d 813, 817 (Minn. 1979) (allowing claim for lost profits based on breach of noncompetition covenant).  Also, contrary to Defendants' arguments, contract law treatises have at least allowed for the possibility of consequential damages against an employee in breach.  See, e.g., 11-60 Corbin on Contracts § 60.8 (Joseph M. Perillo ed., 2013); 24 Richard A. Lord, Williston on Contracts § 66:13 (4th ed. 2013).

However, Minnesota courts have routinely required consequential damages to be reasonably foreseeable by the contracting parties at the time of breach.  See, e.g., DeRosier, 780 N.W.2d at 4-5 ("Although special or consequential damages flow naturally from the breach, they

17

are not recoverable unless they are reasonably foreseeable to the parties at the time of the breach."); Poppen v. Wadleigh, 51 N.W.2d 75, 78 (Minn. 1952) ("Plaintiff was entitled to such damages as, at the time of the making of the contract, the parties could reasonably have contemplated would result from a breach.").  Indeed, the same treatises the parties rely on specifically state consequential damages are recoverable against an employee, provided the damages were foreseeable.[6]  See, e.g., 24 Williston on Contracts § 66:13 ("Consequential damages are also recoverable if, at the time the contract was made, they were foreseeable, that is, if the employee should have known that they were likely to flow from his or her breach."); 11-60 Corbin on Contracts § 60.8 ("Compensation for additional consequential injury that the employee had reason to foresee as the result of his breach when the contract was made is also recoverable.").  Thus, Defendants' motion to limit St. Jude's breach of contract claim to replacement costs is denied, but St. Jude must meet its burden of proving at trial that the damages it seeks are certain and were reasonably foreseeable by de Castro at the time of the breach.

## D. Tortious Interference with Contractual Relationship

### 1. Liability

St. Jude argues collateral estoppel prevents Biosense from re-litigating its liability for

---

[6]  St. Jude cites M.M. Silta, Inc. v. Cleveland-Cliffs, Inc., 561 F. Supp. 2d 1052, 1058-59 (D. Minn. 2008) (Davis, J.), for the proposition that Minnesota courts have declined to require foreseeability when recovering damages.  But St. Jude misreads the case.  In M.M. Silta, the Court declined to adopt a restatement position regarding a particular situation involving consequential damages.  The restatement stated consequential damages could be limited when the amount of damages is disproportionately larger than the contract price, meaning the parties may not have properly anticipated the risk involved at the time of contracting.  See id. (citing Restatement (Second) of Contracts § 351(3)).  Neither party argues for the application of that principle here.

tortious interference.  St. Jude contends Biosense has fully litigated its position that term of years agreements are unenforceable restrictive covenants, and that the Courts in both <u>Jackson</u> and <u>Sterling</u> rejected the argument and found liability.  Collateral estoppel, St. Jude argues, must be applied to prevent Biosense from repeatedly litigating the same issue with different employees in the hopes of obtaining a more favorable outcome.  Biosense responds collateral estoppel should not apply in this case because the parties in <u>Jackson</u> made several legal and factual stipulations they have not made here, and because the circumstances of this case generally differ from those in <u>Jackson</u>.  Specifically, the cases involve different employees, working in different locations, with different job responsibilities.

Collateral estoppel, also known as issue preclusion, precludes parties from re-litigating the same issues.  <u>See</u> <u>Barth v. Stenwick</u>, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009).  A court applies collateral estoppel when:

> (1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits in the prior proceeding; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

<u>Id.</u>  Minnesota courts do not require mutuality between the parties before invoking collateral estoppel.  <u>Aufderhar v. Data Dispatch, Inc.</u>, 452 N.W.2d 648, 650 (Minn. 1990).  The doctrine is equitable, and must be applied flexibly and with fairness in mind.  <u>Barth</u>, 761 N.W.2d at 508.

If the Court had not already determined the validity of the Agreement, it would have applied collateral estoppel against Biosense with regard to the term of years provision's validity.  All four elements of collateral estoppel have been satisfied here.  First, the Agreement bears the same relevant contract terms as those litigated by Biosense in <u>Jackson</u> and <u>Sterling</u>.  Second,

both of those cases involved final judgments on the issue.  <u>See, e.g.</u>, <u>John Morrell & Co. v. Local</u>

<u>Union 304A of United Food & Commercial Workers</u>, 913 F.2d 544, 563-64 (8th Cir. 1990)

(addressing practical nature of finality requirement).  Third, Biosense, the party to be estopped

here, was a party in the previous litigation.  Fourth, the parties have had ample opportunity to

litigate the term of years issue, including an appeal before the Minnesota Court of Appeals.

Biosense offers no persuasive reason as to why these previous opportunities were insufficient or

faulty.

       Contrary to St. Jude's argument, however, collateral estoppel cannot apply to de Castro.

The doctrine does not estop de Castro as a party in privity with Biosense because de Castro's

interests were not fairly represented in the previous litigation.  <u>See</u> <u>Reil v. Benjamin</u>, 584

N.W.2d 442, 445 (Minn. Ct. App. 1998) (listing as relevant factors whether employee had notice

of previous summary judgment motion, whether employee had right to be heard at oral argument

on the motion, whether litigation was brought on employee's behalf, and whether employee had

any control over the litigation).  Application of collateral estoppel to de Castro's arguments

would effectively deprive him of his ability to mount a defense; an opportunity de Castro has

never previously had.

       In addition, collateral estoppel does not automatically establish liability against Biosense

for tortious interference.  Although the issue of contract validity is identical to the previous

litigation, the facts surrounding Bionsense's alleged tortious interference are not.  <u>Jackson</u> and

<u>Sterling</u> found liability on the issue of tortious interference after evaluating entirely different

employees and Biosense's specific interactions with those employees.  To invoke collateral

estoppel as to Biosense's liability in this case would ignore the factual record and circumvent

due process.  Although Biosense's conduct in this case may be similar to those of previous cases, it is not the same, and it is not addressing the same employee.  Thus, whether Biosense is liable as a matter of law for tortious interference must be based on its alleged actions with regard to de Castro.

And, based on the uncontested evidence presented, St. Jude has established liability for tortious interference against Biosense.  A claim for tortious interference requires the establishment of five elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998) (citation omitted).  No dispute remains with regard to the first two factors.  As held above, de Castro had a valid term of years agreement with St. Jude.  The evidence also clearly establishes Biosense knew about the Agreement before hiring de Castro.  More than one Biosense employee involved in hiring de Castro testified that although they may not have initially understood de Castro was subject to a term of years contract, they learned of the contract by January 2012.  See, e.g., Bradford Decl. Ex. 19 ("Ayer Dep.") at 62-63; Ex. 20, at 16.  Biosense also warned de Castro about Jackson's "unfavorable" holding, demonstrating Biosense not only knew about the Agreement, but anticipated litigation over its validity.  See Ayer Dep. at 71-72.  This is only cemented by the "Agreement to Defend" letter to de Castro, in which Biosense formally acknowledges the Agreement and declares its intent to defend de Castro for claims made in connection with the Agreement.  Bradford Decl. Ex. 10.

The evidence supports that Biosense also intentionally procured a breach of the Agreement, which satisfies the third element of tortious interference.  Although the Court has

21

already determined a breach occurred, Biosense argues a question of fact exists with regard to whether it procured the breach or whether de Castro independently sought employment with Biosense.  Biosense argues it merely facilitated "a typical interview process," and at no time "pressured, coerced, or induced" de Castro to accept his current position.  Defs.' Mem. Opp. Summ. J. [Docket No. 199] at 35.  To some degree, Biosense overstates the requirements for "intentional procurement."  In Kallok, the Minnesota Supreme Court found an intentional procurement of a breach of a noncompetition agreement when a third party met with the employee at issue "on numerous occasions" and offered him the position he "eventually accepted."  Kallok, 573 N.W.2d at 362.  Similarly, the Minnesota Court of Appeals found intentional procurement when a defendant employer met with the plaintiff's employee "at least once," outlined a compensation package and urged its acceptance, and offered the employee a position he was prohibited from accepting due to his noncompete.  Medtronic, Inc. v. Hughes, No. A10-998, 2011 WL 134973, at *8 (Minn. Ct. App. Jan. 18, 2011).

Biosense not only procured a breach of the Agreement, it anticipated a lawsuit for the breach and offered de Castro legal counsel as further incentive.  Biosense had on-and-off contact with de Castro since at least November 2010.  Bradford Decl. Ex. 5, at 1.  Starting in 2011, internal emails prove Biosense's regular efforts to communicate with de Castro.  The emails reflect initial attempts to communicate, followed by an email stating Biosense's efforts with de Castro were "progressing."  See, e.g., id. at 2, 5, 8, 10, 12.  Biosense facilitated at least one personal meeting by flying de Castro to Orange County to meet with Biosense recruiters and Biosense's Worldwide Director of Marketing and Sales.  Id. at 15-16.  Viewing the evidence in the light most favorable to Biosense, Biosense did not learn until January 2012 that de Castro

had renewed the term of the Agreement to 2014.  See id. at 123-26.  But after learning of the

renewal, Biosense continued communicating with de Castro, ultimately offering him the

"Territory Manager" position and a signing bonus.  Kerbaugh Decl. Exs. 7, 9.  Biosense also

offered de Castro a full legal defense in anticipation that St. Jude would sue to enforce the

Agreement, a defense de Castro testified he could not afford alone.  Bradford Decl. Ex. 10; Ex.

18, at 67.  There is no genuine question of fact regarding whether Biosense intended to procure

de Castro's breach of the Agreement.

Regarding the fourth factor, St. Jude has also demonstrated Biosense had no justification

for its interference.  A party may justifiably interfere with another's contract if the "alleged

interferer has a legitimate interest, economic or otherwise, in the contract or expectancy sought

to be protected and employs no improper means."  Harman v. Heartland Food Co., 614 N.W.2d

236, 241 (Minn. Ct. App. 2000).  However, bad faith will be imputed when the alleged interferer

has knowledge of the contract at issue.  Kallok, 573 N.W.2d at 362-63 (citing in part Twitchell v.

Nelson, 155 N.W. 621, 622 (Minn. 1915)).  And "[i]nterference is unjustifiable when it is done

for the indirect purpose of injuring the plaintiff or benefiting the defendant."  Furlev Sales &

Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 27 (Minn. 1982).  The question

of justification is ordinarily one of fact, but where no reasonable juror could find the interference

justified, the question may be decided as a matter of law.  Kjesbo v. Ricks, 517 N.W.2d 585, 588

(Minn. 1994); Jackson, 2013 WL 5508389, at *4.

Biosense lacked justification for its interference.  The same considerations warranting

liability in Jackson also apply here, only perhaps to a greater degree.  In Jackson, the court

concluded Biosense lacked justification as a matter of law because, from a business perspective,

Biosense would not have hired an employee from a direct competitor unless it sought to harm the competitor or benefit itself. Id. at *4. Here, Biosense not only sought to compete with St. Jude in the San Francisco area, at least two Biosense strategy documents expressly discuss hiring de Castro in an effort to convert key accounts. Bradford Decl. Ex. 9. And once hired, Biosense tasked de Castro with competing for those accounts. Id. Exs. 11, 12. In Jackson, the court also held Biosense lacked justification because it undisputedly knew about the employee's contract and hired her despite it. Jackson, 2013 WL 5508389, at *4. Here, Biosense not only knew about de Castro's contract, it knew about the district court's holding in Jackson, which enforced a materially identical contract. No reasonable juror could conclude Biosense acted with justification under these circumstances.

Because no genuine question of fact exists with regard to the first four elements of tortious interference with a contractual relationship, St. Jude has established liability against Biosense as a matter of law. Only damages on this claim remain for trial.

### 2. Consequential Damages

As with St. Jude's breach of contract claim, Biosense argues in its motion that St. Jude's claim for tortious interference with a contractual relationship may not include lost profits. However, Minnesota courts have allowed the recovery of lost profits for tortious conduct where the evidence sufficiently establishes such losses. See, e.g., H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1549 (8th Cir. 1989); Northland Merchandisers, Inc. v. Menard, No. C5-96-2177, 1997 WL 408051, at *3 (Minn. Ct. App. Jul. 22, 1997); see also Restatement (Second) of Torts § 912, cmt. d (1979) (allowing recovery lost profits provided sufficient proof exists). In keeping with the analysis above, St. Jude may potentially recover lost profits, provided it demonstrates its

losses with sufficient certainty.

**E.  Tortious Interference with Prospective Economic Advantage**

For its fourth claim, St. Jude alleges Biosense and de Castro tortiously interfered with St. Jude's prospective economic advantage by employing de Castro to compete for its customers. Am. Compl. ¶¶ 16-17.  Biosense moves for summary judgment on this claim, arguing St. Jude has failed to establish several elements of the claim, including causation and damages.  Biosense also argues this claim is duplicative of St. Jude's tortious interference with a contractual relationship claim, because both claims seek the same damages.  St. Jude responds by essentially conceding the claims seek the same damages, but argues it should be allowed to pursue alternate theories of liability.

St. Jude's claim for tortious interference with prospective economic advantage is dismissed.  The claim consists of two elements: "(1) intentionally and improperly interfer[ing] with another's prospective contractual relation (2) by either (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."  Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc., 826 N.W.2d 816, 826 (Minn. Ct. App. 2013) (internal quotations omitted). Tortious interference with prospective advantage protects a party's interest in the "reasonable expectation" of prospective business.  Id. (internal quotation omitted).

The parties agree St. Jude's claim for tortious interference with prospective economic advantage is functionally subsumed by St. Jude's claim for tortious interference with a contractual relationship.  In both claims, St. Jude's theory of liability centers on Biosense's improper hiring of de Castro and the resulting, alleged loss in business.  The only functional

difference between the two claims is that tortious interference with de Castro's contract might also include damages for the cost of replacing de Castro, where the claim for interference with prospective economic advantage presumably would not.  In other words, in this case, St. Jude's first tortious interference claim involves the same theories, evidence, and legal issues as St. Jude's second claim.  However, St. Jude's first claim potentially includes one additional category of damages that St. Jude's second claim does not.  Citing Rule 8(d)(3) of the Federal Rules of Evidence, St. Jude argues it should nevertheless be allowed to pursue the second claim in the alternative.

While it is true a party may pursue alternative claims in their pleadings, courts have an obligation to "secure the just, speedy, and inexpensive determination" of a trial.  Fed. R. Civ. P. 1.  This includes dismissing redundant claims when necessary.  ACIST Med. Sys., Inc. v. OPSENS, Inc., No. 11-539, 2011 WL 4640884, at *2 (D. Minn. Oct. 4, 2011); N. PCS Servs., LLC v. Sprint Nextel Corp., No. 05-2744, 2007 WL 951546, at *12 (D. Minn. Mar. 27, 2007). While the Court might otherwise allow duplicative claims to survive a Rule 12 or summary judgment motion, St. Jude seeks liability as a matter of law.  Having already established liability for its first tortious interference claim, St. Jude has no need to present an alternate theory of liability to the jury, because the jury will not be tasked with determining liability.  In addition, St. Jude cannot obtain additional damages with its second tortious interference claim, meaning this alternate theory could not affect any damages finding the jury makes.  Finally, St. Jude offers no specific evidence or argument in support of its alternative claim; it simply maintains its right to do so.  This only further demonstrates the claim's redundancy, and it is dismissed.

**F.  Breach of Employment Agreement and Duty of Loyalty**

The third count in St. Jude's Amended Complaint appears to allege two theories of liability: (1) de Castro breached the Agreement, and (2) de Castro breached his duty of loyalty to St. Jude by obtaining employment with and training from Biosense.  Am. Compl. ¶¶ 10-12. Biosense moves to dismiss the count, arguing the first claim is duplicative of St. Jude's breach of contract claim, and second, that de Castro never violated his duty of loyalty.  St. Jude does not dispute that the "breach of the employment agreement" allegations are duplicative.  However, it argues the duty of loyalty allegations must survive, because they rely on a different legal theory of liability, and because sufficient evidence exists to demonstrate a question of fact.

First, because no dispute exists regarding the breach of the employment agreement allegations, this theory of liability is dismissed as redundant.

Second, although St. Jude has potentially established a viable duty of loyalty claim, it has failed to demonstrate how its recovery for this claim would differ in any way from its breach of contract claim.  Even when a plaintiff has stated a tort claim that is independent of its breach of contract claim, the plaintiff has the burden of demonstrating how the damages it seeks for the tort differ from the damages it seeks for the breach of contract.[7]  Otherwise, the plaintiff is seeking impermissible double recovery.  See Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 128 (Minn. Ct. App. 1992).

---

[7] As a general principle of Minnesota law, a party may not recover both contract and tort damages from the same conduct.  Outdoor Env'ts, Inc. v. Maro, No. A04-1332, 2005 WL 1020898, at *5 (Minn. Ct. App. May 3, 2005).  The key to determining whether an independent tort claim may lie in parallel to a contract claim is in whether the tort arises from a separate duty, or whether the gravamen of the action is in the contractual violation.  Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975); see also Constr. Sys., Inc. v. Gen. Cas. Co. of Wis., No. 09-3697, 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011).  In this case, St. Jude's claim for breach of the duty of loyalty would stand independently of its breach of contract claim, but this holding need not be reached.

Here, St. Jude has failed to demonstrate how the duty of loyalty claim is anything other than redundant and seeking double recovery.  St. Jude claims de Castro was disloyal in two ways: first, by preparing for the California declaratory action with Biosense, and second, by sending a doctor's email address to Biosense while de Castro was still employed at St. Jude. Regarding the first, St. Jude does not cite any case indicating that the filing of a lawsuit could constitute actionable disloyalty, and the Court is not aware of any such precedent.  Regarding the second, even assuming the relaying of basic contact information could constitute a disloyal act, St. Jude has not demonstrated how the damages for this conduct—or any similarly competitive conduct—would in any way differ from the damages St. Jude seeks for its breach of contract claim.  Nor has St. Jude demonstrated how the evidentiary or legal issues would differ at trial. As with St. Jude's tortious interference claims, the Court's finding of liability for breach of contract makes a second theory of liability addressing the same conduct redundant.  As such, the duty of loyalty claim is dismissed.

## G.  Civil Conspiracy

Biosense moves for summary judgment on St. Jude's claim for civil conspiracy, in which St. Jude alleges Defendants conspired to breach the Agreement.  Biosense argues a claim for civil conspiracy cannot survive without an underlying wrong.  In this case, Biosense contends, the civil conspiracy claim derives from St. Jude's tortious interference with a contractual relationship claim.  But because de Castro cannot tortiously interfere with his own contract, he cannot conspire to commit the same wrongful act, either.  In response, St. Jude offers no substantive argument, stating only that its tort claims should survive summary judgment and that the record supports sending this claim to the jury.

The civil conspiracy claim is dismissed.  Biosense, the subsidiary, and Johnson & Johnson, the parent company, cannot conspire with each other.  Palm Beach Polo, Inc. v. Dickinson Fin. Corp., 221 F.3d 1343 (8th Cir. 2000) (unpublished) (citing Fogie v. Thorn Ams., Inc., 190 F.3d 889, 899 (8th Cir. 1999)).  Further, Biosense is correct de Castro cannot tortiously interfere with his own agreement, meaning he cannot be liable for conspiring to commit this tort.  See Hern v. Bankers Life Cas. Co., 133 F. Supp. 2d 1130, 1139 (D. Minn. 2001).  Even if this were not the case, the civil conspiracy claim would be entirely duplicative of the underlying tort, and dismissed on that basis.

## H.  Unjust Enrichment

St. Jude has pled a claim for unjust enrichment, presumably in the alternative to its tortious interference claims.  Am. Compl. ¶¶ 18-23.  A party may plead alternative forms of relief, including both legal and equitable claims.  However, "[a] party may not have equitable relief where there is an adequate remedy at law available."  ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc., 544 N.W.2d 302, 305 (Minn. 1996).  As discussed above, the Court has held a viable remedy at law exists, and so this claim is dismissed.

## I.  Expert Testimony

St. Jude moves to exclude the testimony of three of Biosense's expert witnesses.  Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 reflects but does not codify the holding of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and the cases interpreting Daubert, including Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Fed. R. Evid. 702 advisory committee's note.

Under Daubert, trial courts act as "gatekeepers" to ensure that: the proposed expert testimony is useful to the factfinder in deciding the ultimate fact issue; the expert witness is qualified; and the proposed testimony is "reliable or trustworthy in an evidentiary sense. . . ." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). In addition to Rule 702, trial courts may consider several factors set out by Daubert for determining reliability. See Daubert, 509 U.S. at 593-94 (listing factors). The trial court should generally resolve doubts about the usefulness of an expert's testimony in favor of admissibility. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001).

### 1. Gorowsky

St. Jude moves to exclude the testimony of Donald Gorowsky, a financial consultant retained by Defendants to evaluate St. Jude's claims for damages. The Amended Pretrial Scheduling Order [Docket No. 35] ("Scheduling Order") states the deadlines for expert reports

as follows:

    a.    By Party bearing burden of proof as to a particular issue: on
          or before February 1, 2013.   Rebuttal reports shall be
          disclosed by April 1, 2013.

    b.    By Party responding: on or before March 15, 2013.  Rebuttal
          reports shall be disclosed by April 1, 2013.

The parties' arguments regarding Gorowsky largely devolve into apportioning blame.  St.

Jude moves to exclude Gorowsky because Gorowsky's preliminary expert report, disclosed on

March 15, 2013, offered essentially no opinions.  Carrie L. Hund Decl. re: Gorowsky [Docket

No. 185] Ex. 1 ("Gorowsky Report").  Two months later, in May 2013, St. Jude produced for the

first time a "preliminary damages analysis" and supporting documents.  Id. Exs. 2-3.  In June

2013, St. Jude deposed Gorowsky.  Id. Ex. 3 ("Gorowsky Dep.").  At the deposition, Gorowsky

offered some limited opinions regarding the weaknesses in St. Jude's preliminary calculations,

but testified he had not yet reviewed at least two of the three recently produced documents.  Id.

at 45-46.  Gorowsky also testified Defendants had not asked him to supplement his report.  Id. at

48.  In August 2013, the deadline to conduct discovery passed, and Gorowsky did not

supplement his opinions.  Because the Gorowsky Report does not state substantive opinions, and

because Defendants failed to request an extension of discovery deadlines, St. Jude argues

Gorowsky's opinions should be excluded in their entirety.

Defendants respond that the blame does not fall solely on their shoulders.  By the time

Gorowsky's initial expert report came due in March 2013, Defendants argue St. Jude had failed

to produce any meaningful calculation or categorization of damages, and had consistently failed

to produce relevant documents or respond to interrogatories.  As soon as St. Jude produced its

preliminary damages information in May 2013, Defendants requested additional information it

viewed as necessary to evaluate replacement costs and lost profits.  Courtland Merrill Decl. re:

Experts [Docket No. 207] Ex. 12.  St. Jude refused to comply, and in July 2013, Defendants

moved the Court to compel St. Jude to produce the requested information.  In October 2013,

Judge Boylan ordered St. Jude to produce essentially all of the requested damages information

by October 15, 2013.  Order, October 1, 2013 [Docket No. 198].[8]  Defendants argue Gorowsky

has consistently held the position that he cannot provide a complete set of opinions regarding

damages until Defendants receive the requested documents.  See, e.g., Gorowsky Dep. at 38, 50,

51.  Biosense argues it should not be punished for St. Jude's failure to comply with discovery in

good faith.  In any event, Biosense contends the Court should allow Gorowsky to testify based

on the opinions he stated at his deposition.

   Neither side is without fault on the timeliness of discovery relating to the evaluation of

damages in this case.  The record, including Judge Boylan's discovery orders, make clear St.

Jude has resisted producing relevant information on more than one occasion.  As a result, St.

Jude may well have frustrated Gorowsky's ability to provide expert opinions.  On the other hand,

Defendants should have requested an extension of time from St. Jude or otherwise brought the

expert discovery deadlines to the Court's attention, instead of raising this issue for the first time

during summary judgment.  Nevertheless, Defendants' conduct does not reflect an abuse of

discovery warranting the total exclusion of Gorowksy's opinions.  See, e.g., Trost v. Trek

Bicycle Corp., 162 F.3d 1004, 1009-10 (8th Cir. 1998) (affirming exclusion of expert testimony

where plaintiff waited to review defense expert before obtaining his own expert analysis).

---

   [8]  This date of production fell after the filing of the present motion's memoranda,
meaning the parties have not yet had an opportunity to discuss the substance of St. Jude's
production.

In the interest of achieving a just trial, the Court exercises its discretion in granting Gorowsky 30 days from the date of this Order to produce a supplemental report. See In re Baycol Prods. Litig., 596 F.3d 884, 888 (8th Cir. 2010) ("District courts have broad discretion in establishing and enforcing deadlines and in maintaining compliance with discovery and pretrial orders."). St. Jude shall then have up to 30 days following the production of this report to re-depose Gorowsky if St. Jude so chooses. Defendants must make Gorowsky available for a deposition during this time. Because St. Jude failed to timely produce relevant information, it will not be allowed to file a second motion to exclude Gorowsky's opinions. St. Jude will, of course, have a full opportunity to cross-examine Gorowsky before the jury and may raise targeted motions in limine if necessary.

### 2. Aguilar

St. Jude also moves to exclude the testimony of Dina Older Aguilar, an economics analyst retained by Biosense. Aguilar produced a report disclosing three key opinions: (1) general enforcement of St. Jude's term of years agreements would result in "de facto injunctions," and limit St. Jude employees' market mobility; (2) widespread enforcement of fixed-term employment agreements would harm competition; and (3) term of years agreements are not the "least restrictive means" for accomplishing the benefits St. Jude claims are conferred by such agreements. Carrie L. Hund Decl. re: Aguilar & O'Neill [Docket No. 191] Ex. 1, at 2. St. Jude argues Aguilar's opinions should be excluded because they concern legal issues and do not assist the jury in resolving the underlying factual disputes. Defendants respond that Aguilar offers no opinions about the parties' legal obligations. Instead, Aguilar offers opinions regarding "the economic impact resulting from [St. Jude's] use of term agreements in employment

contracts which goes to the factual issue of the validity and enforceability of the term of years

agreements." Defs.' Mem. Opp. Experts Exclusion [Docket No. 206] at 36.

Aguilar's testimony is excluded.  Rule 702 states the court may admit an expert's

testimony if such testimony aids the jury in determining "a fact in issue."  The jury does not

resolve legal issues, and as such, "expert testimony on legal matters is not admissible."  S. Pine

Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003).

Although Defendants label the validity of a contract as a question of fact for the jury to decide,

Minnesota courts have long held otherwise.  See, e.g., Pike Rapids Power Co. v. Minneapolis, St.

P. & S.S.M.R. Co., 99 F.2d 902, 915 (8th Cir. 1938) ("The terms of a contract, if it be

ambiguous, are matters of fact to be determined in the same manner as other facts . . . while the

construction of the contract and its legal effect are questions of law for the court.").

Aguilar's opinions impermissibly interpret matters of law, and would attempt to guide the

jury in determining an issue beyond their charge.  Even if Aguilar's opinions were strictly

limited to the economic impact of term of years agreements, such testimony would not aid the

jury in determining any of the relevant facts at issue.  The jury will be tasked with deciding the

facts as they specifically relate to de Castro and the parties in this case; namely, whether St. Jude

suffered damages, and if any, to what extent.[9]  The general desirability or market impact of term

of years agreements is not a jury issue.  Because Aguilar offers no other relevant opinions, her

testimony is excluded.

**3. O'Neill**

---

[9]  Had the Court not decided liability as a matter of law, Aguilar's opinions would still be
excluded, as her opinions would not aid a jury in determining whether a breach of contract or
tortious interference occurred in this case.

As their final expert witness, Defendants offer Brian O'Neill, a retired trial attorney with experience in negotiating and determining attorneys' fees. O'Neill offers opinions in response to St. Jude's expert Sam Hanson, an attorney with similar experience, regarding St. Jude's claim for attorneys' fees. O'Neill testifies in his affidavit (which serves as his expert report) regarding the general availability of attorneys' fees, and the American rule against fee shifting absent a statute or contract. Hund Decl. re: Aguilar & O'Neill at Ex. 4 ("O'Neill Report"). O'Neill concludes that because St. Jude did not seek injunctive relief, it is barred from seeking fees in accordance with Kallok, 573 N.W.2d at 363-64. O'Neill also opines that although St. Jude has not yet produced billing statements, he is prepared to testify regarding the reasonableness of any fees sought. O'Neill never refers to de Castro in his affidavit; instead, he refers to the employee in the Sterling case several times.

St. Jude argues O'Neill's testimony should be excluded from trial. O'Neill offers impermissible legal opinions as evidence, St. Jude argues, because he opines regarding the availability of attorneys' fees as a general legal matter, and he assumes the Court's role by interpreting how Minnesota law applies to this case. St. Jude also argues for exclusion because O'Neill's report refers only to Sterling, a plaintiff in a factually-unrelated case, meaning O'Neill's opinions have no relevance to de Castro's case. Finally, St. Jude argues O'Neill's response is untimely, because Defendants served his report on April 1, 2013, when the deadline was March 15. In its response, Defendants claim O'Neill does not offer any legal opinions regarding the availability of attorneys' fees, but rather addresses the question of how legal fees should fairly be apportioned in this case. Defendants also argue O'Neill's report was not untimely because his report rebuts Hanson's report, making the report due on April 1.

35

O'Neill's opinions are excluded to the extent they offer legal opinions.  As discussed, expert testimony regarding the interpretation of law is inappropriate.  O'Neill's opinions regarding the application of <u>Kallok</u> to this case, and thus whether St. Jude may appropriately seek attorneys' fees, are unambiguously legal in nature.  These opinions, and any related or similar opinions, are thus impermissible.

Next, O'Neill's remaining opinion, regarding the reasonableness of any fees sought by St. Jude, is akin to a placeholder.  O'Neill states he is prepared and qualified to offer opinions regarding reasonableness when presented with St. Jude's attorney billing statements.  O'Neill Report ¶¶ 12, 13.  Because St. Jude's conduct in other areas of discovery suggests a lack of cooperation, it is plausible St. Jude has delayed producing fee estimates for O'Neill to review. Indeed, the report produced by Hanson on behalf of St. Jude is similarly limited.  <u>See</u> Merrill Decl. re: Experts at Ex. 7.  Hanson concludes that St. Jude's attorneys have stated reasonable billing rates, but he offers no specific opinion as to whether the amount of attorneys' fees St. Jude requests is reasonable in light of the circumstances, or even what that amount is.  <u>See</u> <u>id.</u> Like O'Neill, it appears Hanson had not reviewed St. Jude's attorney billing statements by the time he produced his report.  As such, O'Neill's reasonableness opinions will not be excluded at this time.  The parties may revisit the issue during motions in limine, when the parties' conduct and the final discovery forms a more complete picture.  In the meantime, Defendants should file an updated report correcting the use of Sterling's name in the O'Neill Report.[10]

---

[10]  The Court is essentially taking Defendants at their word when they say O'Neill used Sterling's name as an innocent error, and not as the result of a cookie cutter effort to re-state O'Neill's opinions in <u>Sterling</u>.  To the extent this trust is misplaced, the issue will be rectified before or during trial.

Finally, the O'Neill Report is not untimely.  At least to the extent it addresses the necessity and reasonableness of the attorneys' fees sought, the O'Neill Report ostensibly rebuts Hanson's opinions.  As a result, Defendants' deadline to serve the report was April 1, 2013.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiff St. Jude Medical, S.C., Inc.'s Motion for Partial Summary Judgment [Docket No. 171] is **GRANTED** in part and **DENIED** in part, as described herein.

2.    Defendants Biosense Webster, Inc., Johnson & Johnson, and Jose B. de Castro's Motion for Partial Summary Judgment [Docket No. 176] is **GRANTED** in part and **DENIED** in part as described herein, and as follows: Counts 3, 4, 5, and 6 of the Amended Complaint [Docket No. 43] are **DISMISSED**;

3.    Plaintiff's Motion to Exclude Expert Testimony by Gorowsky [Docket No. 182] is **DENIED** as stated herein; Gorowsky may file a supplemental expert report no later than 30 days from the date of this Order; Plaintiff may depose Gorowsky no later than 30 days from the date of Gorowsky's production; and

4.    Plaintiff's Motion to Exclude Expert Testimony by Aguilar and O'Neill [Docket No. 188] is **GRANTED** in part and **DENIED** in part.

BY THE COURT:

_____ s/Ann D. Montgomery _____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 3, 2014.