UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

St. Jude Medical S.C., Inc.,

        Plaintiff,

  v.                                                            **FINDINGS OF FACT AND**
                                                        **CONCLUSIONS OF LAW**
                                                          Civil No. 12-621 ADM/TNL

Biosense Webster, Inc., Johnson & Johnson,
and Jose B. de Castro,

        Defendants.

_____

Edward F. Fox, Esq., Carrie L. Hund, Esq., Mark R. Bradford, Esq., Jeffrey R. Mulder, Esq., and Nicole A. Delaney, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Plaintiff.

Joseph W. Anthony, Esq., Mary L. Knoblauch, Esq., Courtland C. Merrill, Esq., and Steven C. Kerbaugh, Esq., Anthony Ostlund Baer & Louwagie, PA, Minneapolis, MN, on behalf of Defendants.
_____

      This matter came before the undersigned United States District Court judge for findings of fact and conclusions of law as to Plaintiff St. Jude Medical S.C., Inc.'s ("St. Jude") claim for attorney's fees. The Court previously granted summary judgment in favor of St. Jude, finding Defendant Jose B. de Castro ("de Castro") liable for breach of contract and Defendants Biosense Webster, Inc., and Johnson & Johnson (together, "Biosense") liable for tortious interference with de Castro's employment agreement. See Order, Feb. 3, 2014 [Docket No. 223]. Remaining for trial were three potential categories of damages: costs incurred for replacing de Castro after he left St. Jude to work for Biosense, the lost profits St. Jude suffered as a result of de Castro's departure as an employee, and the attorney's fees St. Jude incurred in protecting its contract rights. Before trial began, the parties agreed to submit the issue of attorney's fees to the Court, and submit the remaining two damage categories to the jury.

The Findings of Fact and Conclusions of Law herein address only the issue of St. Jude's claim for attorney's fees. The findings are based on the oral arguments and briefing of the parties, the exhibits submitted to the Court, and the parties' declarations and expert reports.

## I. FINDINGS OF FACT

1. This case between the parties began on March 6, 2012, when Defendants filed a declaratory judgment action against St. Jude in California state court, which St. Jude later removed to the United States Court for the Central District of California.

2. De Castro's employment agreement with St. Jude (the "term of years" agreement or "TOY") required all related proceedings to be venued in Minnesota. See Order, May 4, 2012 [Docket No. 25].

3. While the California case was pending, St. Jude filed this action on March 9, 2012, in the District of Minnesota. The District Court for the Central District of California ultimately transferred the California action here, and that case was consolidated with the present action. See Order, July 11, 2012 [Docket No. 31].

4. In its Amended Complaint, St. Jude alleged five claims: (1) breach of contract against de Castro; (2) tortious interference with contract against Biosense; (3) breach of employment agreement and duty of loyalty against de Castro; (4) tortious interference with prospective economic advantage against Defendants; (5) unjust enrichment against Biosense; and (6) civil conspiracy by Biosense. Am. Compl. [Docket No. 43].

5. On September 12, 2013, the parties filed cross-motions for summary judgment. St. Jude sought an order finding liability against Defendants as a matter of law, while Defendants sought dismissal of St. Jude's claims. The Court granted both motions in part. The Court found

liability as a matter of law on both St. Jude's breach of contract claim against de Castro, and its claim for tortious interference against Biosense. St. Jude's remaining claims were dismissed with prejudice. Order, Feb. 3, 2014.

6. From July 8, 2014, to July 14, 2014, the parties tried the issue of damages to a jury. The jury found de Castro caused St. Jude to incur $47,680.52 in replacement costs due to his breach of contract. The jury also found Biosense caused St. Jude to incur an additional $47,680.52 in replacement costs. Finally, the jury awarded St. Jude $550,952 for lost profits as a result of Biosense's tortious interference. See Special Verdict Form [Docket No. 289].

7. Attorneys from Bassford Remele, PA ("Bassford Remele") represented St. Jude from the beginning of the California action in March 6, 2012, through the end of trial on July 14, 2014.

8. From March 6, 2012, through July 13, 2012, Bassford Remele's attorneys performed 3,360.3 hours of work on behalf of St. Jude. In total, St. Jude incurred $924,287.00 in attorney's fees for Bassford Remele's representation. St. Jude has paid Bassford Remele's invoices through May 31, 2014. St. Jude makes regular payments on these invoices, and is expected to pay the remainder of its fee balance in 30 to 45 days. Pl.'s Ex. 131.

9. St. Jude also employed a second law firm, Feldman Gale, PA, in connection with the California case. Feldman Gale performed 228.6 hours of work for St. Jude, for a total of $78,772.00 in attorney's fees. Pl.'s Ex. 131.

10. Biosense has employed three law firms to represent it in the California and Minnesota actions. Biosense's primary firm, Anthony Ostlund Baer & Louwagie, PA, performed work totaling $912,322.00 in connection with this dispute. The other two firms,

Steptoe and Johnson LLP and Thompson Knight LLP, generated a combined total of $180,036.50 in attorney's fees.  Pl.'s Ex. 131.

## II.  CONCLUSIONS OF LAW

1.	In Kallok v. Medtronic, 573 N.W.2d 356 (Minn. 1998), an employee of Medtronic, Inc., left the company to work for Angeion Corporation, a competitor.  Kallok and Angeion preemptively filed suit against Medtronic, seeking a declaratory judgment determining Kallok's rights under his agreements with Medtronic.  Medtronic counterclaimed against Kallok for breaching the non-compete and against Angeion for tortious interference.  Id. at 357-60.

2.	The Minnesota Supreme Court allowed Medtronic to recover attorney's fees as part of its damages against Angeion.  The court held that generally, the "American rule" of litigation prevents a party from shifting its attorney's fees to an opponent without a specific contractual or statutory authorization.  Id. at 363.  One exception to this general rule, however, is the "third-party litigation exception," under which "[i]t is well-established that a third party who interferes with and causes the breach of a contract may be held liable for damages."  Id. at 361.  These damages may include attorney's fees when the defendant's conduct "thrusts or projects the plaintiff into litigation with a third party."  Id. at 363.  In this situation, the plaintiff may recover from the defendant the fees it incurred in litigating with the third party.  Id.

3.	In Kallok, the court held the third-party litigation exception applied to non-compete agreements in the same way it applied to standard contracts.  Angeion tortiously interfered with Kallok's non-compete without justification, after which Medtronic was "forced into court" to protect its contract rights.  Id. at 363.  Expressed another way, "but for" Angeion's interference, Medtronic would not have had to enforce its valid non-compete agreement with

Kallok. Id. at 363-64.  The court thus found Angeion liable for the attorney's fees Medtronic incurred in enforcing its non-compete against Kallok.

4.	Minnesota courts and the Eighth Circuit Court of Appeals have continued to recognize the third-party litigation exception to the American rule.  See, e.g., MinnComm Util. Const. Co. v. Yaggy Colby Assocs., Inc., No. A11-1211, 2012 WL 1470191, at *3 (Minn. Ct. App. Apr. 30, 2012); Miller v. Pioneer Abstract & Title Co., No. A05-779, 2005 WL 3470333, at *3 (Minn. Ct. App. Dec. 20, 2005); OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 352 (8th Cir. 2007) (recognizing but declining to apply exception because defendants were joint tortfeasors).

5.	In addition, the Minnesota Court of Appeals has applied the third-party litigation exception to Biosense in a previous dispute between the parties with similar facts and a former St. Jude employee named Jackson.  St. Jude Medical S.C., Inc. v. Biosense Webster, Inc., No. A13-0414, 2013 WL 5508389, at *4-7 (Minn. Ct. App. 2013) (the "Jackson" case).  In Jackson, the court affirmed the finding that Biosense had tortiously interfered without justification with St. Jude's employment contract.  Id.  The court also found Minnesota law to apply over Texas law in part because the third-party litigation exception preserved Minnesota's policy of "fully compensat[ing] tort victims."  Id. at 6.

6.	In the instant case, Biosense has been found as a matter of law to have tortiously interfered with de Castro's employment agreement without justification.  See Order, Feb. 3, 2014.

7.	In ruling on the parties' motions in limine, the Court further held that Biosense's tortious interference had "thrust" or "projected" St. Jude into litigation with de Castro.  To

protect its rights under the TOY, St. Jude was essentially "forced into court" to pursue its breach of contract claim. Kallok, 573 N.W.2d at 363. St. Jude would not have a breach of contract claim to pursue but for Biosense's recruitment of de Castro. Id.; Order, Feb. 3, 2014 (detailing Biosense's recruitment efforts).

8. Consistent with Minnesota law, St. Jude is entitled to recover attorney's fees from Biosense for the costs it incurred in enforcing its contract rights with de Castro.

9. However, St. Jude is not entitled to recover the attorney's fees it spent litigating its tortious interference claim against Biosense. The Minnesota Supreme Court has been "exceedingly cautious when awarding attorney fees as damages." Osborne v. Chapman, 574 N.W.2d 64, 68 (Minn. 1998) (citing Kallok, 573 N.W.2d at 363).

10. The third-party litigation exception, originally derived from the Restatement (First) of Torts, envisioned situations in which a defendant caused the plaintiff to be thrust into separate litigation with a third party. See Prior Lake State Bank v. Groth, 259 Minn. 495, 499-500 (Minn. 1961) (citing Restatement (First) of Torts § 914 (1939)). When the third party and the tortfeasor are both named as defendants in the same suit, the court should award attorney's fees only as to the third party.[1] This is because in the lawsuit, two different attorney's fees rules apply. The claim against the third party falls under the third-party litigation exception to the American rule, meaning attorney's fees may be recovered as damages. The claim against the tortfeasor is a regular tort claim, which does not fall under an exception. See Restatement (First)

---

[1] In some cases, the court has awarded the full damages requested. See, e.g., Medtronic, Inc. v. Hughes, No. A10-998, 2011 WL 134973, at *4, 8 (Minn. Ct. App. 2011) (affirming full request for attorney's fees against both third party and tortfeasor). Given the overall state of the law, and the court's decision in Kallok, the approach more likely to be adopted by the Minnesota Supreme Court is applied here.

of Torts § 914 comment c. ("Aside from statutory provisions, a successful party in an action of tort is not entitled to compensation for loss of time, attorney fees or other expenses in the conduct of the litigation.").

11. This approach was confirmed in Kallok. In Kallok, the defendants were in a similar position to those in the present case: the "third party" was the plaintiff's former employee, and the tortfeasor was the plaintiff's competitor. The district court in that case concluded the plaintiff had incurred $111,221.30 in total attorney's fees. The court then discounted the total amount by 10%, concluding the plaintiff had spent this percentage of fees on its tortious interference claim against the tortfeasor. Kallok, 573 N.W.2d at 360-61. The Minnesota Supreme Court reversed the court of appeals and affirmed this award.

12. Other Minnesota courts have similarly encouraged a more tailored approach to awarding damages under the third-party litigation exception. See, e.g., MinnComm, 2012 WL 1470191, at *3 (holding "a plaintiff may not recover fees incurred in litigation with one of the underlying tortfeasors"); Wilson v. Kvalsten, C4-98-2031, 1999 WL 508398, at *1, 6-7 (Minn. Ct. App. July 20, 1999) (affirming attorney's fees award only as to third party, who settled claim before trial).

13. In this case, St. Jude argues that it was thrust into court to protect its rights under the TOY, and thus St. Jude should receive the total amount of attorney's fees it incurred. To the extent any reduction in attorney's fees is appropriate, St. Jude's expert Sam Hanson opines that 85% of St. Jude's total expended attorney's fees were in pursuit of its breach of contract claim against de Castro. Thus, St. Jude requests an attorney's fees award of $852,600.15.

14. In response, Biosense's expert Brian O'Neill opines that only a small fraction of

this litigation was geared toward the pursuit of St. Jude's breach of contract claim.  In proposing an alternative amount, O'Neill suggests two possibilities.  First, O'Neill identifies seven theories of liability alleged by St. Jude in its complaint.  Because the breach of contract claim against de Castro was only one of those seven claims, O'Neill opines the Court should only award 1/7th of the total attorney's fees spent.  Second, O'Neill briefly models what a typical breach of contract case might involve, and how much such a hypothetical case would cost.  Under his model, O'Neill estimates attorney's fees of about $130,000.

15. Neither parties' arguments or expert opinions are wholly persuasive.  Hanson's proposed 15% reduction is relatively arbitrary, but comparable to the 10% reduction made by the court in Kallok.  On the other hand, O'Neill's opinions understate the relative importance of de Castro's breach of contract.  Although St. Jude stated additional claims in the Amended Complaint, the core reason it filed suit, the reason it was "forced into court," was due to de Castro's breach of the TOY.  Additionally, O'Neill's hypothetical breach of contract model lacks enough detail or supporting evidence to make it sufficiently reliable.

16. The award of damages, including in this case, is never a perfect science.  In similar situations, Minnesota courts have tended to make small or no reductions to the attorney's fees awarded under the third-party litigation exception.  See, e.g., Kallok, 573 N.W.2d at 360; Hughes, 2011 WL 134973, at *4, 8.  In this case, however, a review of St. Jude's fee statements suggests it spent a significant portion of this litigation pursuing its tortious interference claim against Biosense.  The jury's verdict is similarly useful, in that the jury found the vast majority of damages suffered by St. Jude were due to Biosense's interference, and not de Castro's breach of contract.  In keeping with this finding, and in an attempt to proportionally and fairly award

attorney's fees to St. Jude, the Court shall award St. Jude 66% of its total fees.

17. St. Jude is hereby awarded $662,018.94 as damages under the third-party litigation exception to the American rule.

### III.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff St. Jude Medical S.C., Inc. is awarded $662,018.94 in attorney's fees damages.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 18, 2014.