**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

St. Jude Medical, S.C., Inc.,

Plaintiff,

v.

Biosense Webster, Inc., Johnson & Johnson, and Jose B. de Castro,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 12-621 ADM/TNL

---

Edward F. Fox, Esq., Mark R. Bradford, Esq., and Nicole A. Delaney, Esq., Bassford Remele, PA, Minneapolis, MN, on behalf of Plaintiff.

Joseph W. Anthony, Esq., Mary L. Knoblauch, Esq., Courtland C. Merrill, Esq., and Steven C. Kerbaugh, Esq., Anthony Ostlund Baer & Louwagie, PA, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for rulings on Defendants Biosense Webster, Inc., and Johnson & Johnson (together, "Biosense") and Jose B. de Castro's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial [Docket No. 305], and Plaintiff St. Jude Medical, S.C., Inc.'s ("St. Jude") Motion for Award of Prejudgment Interest and Taxation of Expert Fee Costs [Docket No. 300]. For the reasons set forth below, Defendants' Motion is denied and St. Jude's Motion is granted in part.

## II. BACKGROUND

This case was commenced by St. Jude on March 9, 2012 after de Castro, a medical device sales representative for St. Jude, left St. Jude to work for Biosense, a direct competitor. See generally Compl. [Docket No. 1]. After joining Biosense, de Castro sold competing products to some of the same customers he had serviced on behalf of St. Jude. De Castro's

competing sales to former customers included the sale of a cardiac mapping system to Sequoia Hospital ("Sequoia").

On February 3, 2014, this Court granted summary judgment to St. Jude on the issues of de Castro's liability for breach of his term-of-years employment agreement and Biosense's liability for tortious interference with de Castro's employment agreement. See Mem. Opinion and Order, Feb. 3, 2014 [Docket No. 223] ("Summary Judgment Order"). Remaining for trial were three potential categories of damages: (1) the costs St. Jude incurred for replacing de Castro after he left St. Jude to work for Biosense; (2) the lost profits St. Jude suffered as a result of de Castro's departure as an employee; and (3) the attorney's fees St. Jude incurred in enforcing its contract rights under the employment agreement.

The parties agreed to submit the issue of attorney's fees damages to the Court and to try the remaining two damage categories to the jury. See Trial Tr. vol. I [Docket No. 316] at 24-27. A jury trial was held from July 8, 2014 to July 14, 2014. The jury found de Castro caused St. Jude to incur $47,680.52 in replacement costs due to his breach of the employment agreement, and that Biosense caused St. Jude to incur an additional $47,680.52 in replacement costs. The jury also awarded St. Jude $550,952 for lost profits as a result of Biosense's tortious interference with de Castro's employment agreement. See Special Verdict Form [Docket No. 289].

The issue of attorney's fees damages was then presented to the Court through oral argument, briefing, exhibits, declarations, and expert reports. On July 18, 2014, the Court ordered Biosense to pay $662,018.94 to St. Jude in attorney's fees incurred by St. Jude in enforcing its contract rights with de Castro. Mem. Opinion and Order, July 18, 2014 [Docket No. 293] ("Attorney's Fees Damages Order"). The attorney's fees were awarded as damages

under the third-party exception to the "American rule" of litigation, an exception recognized in Kallok v. Medtronic, Inc., 573 N.W.2d 356 (Minn. 1998).[1]

On July 21, 2014, judgment was entered against de Castro for $47,680.52 in replacement cost damages and against Biosense for $47,680.52 in replacement cost damages, $550,952.00 in lost profits damages, and $662,018.94 in attorney's fees damages. Judgment [Docket No. 296].

On August 8, 2014, Biosense and de Castro (collectively, "Defendants") filed their Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ("Post-Trial Motion"), and St. Jude filed its Motion for Award of Prejudgment Interest and Taxation of Expert Fee Costs.

## III. DISCUSSION

### A. Defendants' Post-Trial Motion

Defendants request that this Court grant its motion for judgment as a matter of law or, alternatively, a new trial.

#### 1. Judgment as a Matter of Law

Defendants argue they are entitled to judgment as a matter of law because St. Jude failed to introduce evidence sufficient for a reasonable jury to conclude that St. Jude suffered lost profits and replacement cost damages as a result of de Castro's departure from St. Jude. Defendants further argue that since St. Jude failed to produce sufficient evidence of compensable

[1] Generally, the American rule prevents a party from shifting its attorney's fees to an opponent absent a specific contractual or statutory authorization. Kallok, 573 N.W.2d at 363. Under the third-party litigation exception, "a third party who interferes with and causes the breach of a contract may be held liable for damages." Id. at 361. These damages may include attorney's fees when the defendant's conduct "thrusts or projects the plaintiff into litigation with a third party." Id. at 363.

damages, it is not entitled to recovery of its attorney's fees.

Rule 50(b) of the Federal Rules of Civil Procedure governs renewed motions for judgment as a matter of law. Under Rule 50(b), the court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b)(1)-(3). The standard of review for granting a Rule 50(b) motion is whether sufficient evidence exists to support the jury verdict. A motion for judgment as a matter of law should only be granted when "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." Washburn v. Kan. City Life Ins. Co., 831 F.2d 1404, 1407 (8th Cir. 1987) (citation omitted). In deciding a motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the party who prevailed before the jury, making all reasonable inferences in that party's favor. Id. (citation omitted). The court must not substitute its own judgment for that of the trier of fact. Ryther v. KARE 11, 864 F. Supp. 1510, 1519 (D. Minn. 1994) (citing Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 803 (8th Cir. 1994)).

**a. Lost Profits**

Defendants argue there is insufficient evidence to support the jury's conclusion that St. Jude experienced lost profits attributable to de Castro's departure. To establish damages for lost profits, a "plaintiff must establish by a preponderance of the evidence that (a) profits were lost, (b) the loss was directly caused by the breach of the covenant not to compete, and (c) the amount of such causally related loss is capable of calculation with reasonable certainty rather than benevolent speculation." B & Y Metal Painting, Inc. v. Ball, 279 N.W.2d 813, 816 (Minn. 1979).

Defendants contend St. Jude's evidence was too speculative to prove entitlement to lost profits because St. Jude failed to consider other potential causes of its declining profits, including Biosense's superior product and changing market trends. Defendants also argue the correlation between St. Jude's decline in profits and Biosense's nearly identical increase in profits was an insufficient basis for establishing causation.

St. Jude produced ample evidence for a reasonable jury to conclude that St. Jude's lost profits were caused by de Castro's departure from St. Jude. In addition to producing evidence of St. Jude's decline in profits and Biosense's corresponding increase in profits following de Castro's departure, St. Jude produced internal documents from Biosense showing Biosense had targeted Sequoia as a business opportunity and had developed a plan to hire de Castro as a strategy for converting the Sequoia account from St. Jude to Biosense. Trial Exs. P32, P33. Shortly after de Castro was hired at Biosense, he presented Sequoia with the opportunity to acquire a Biosense cardiac mapping system at no charge on a trial basis. Trial Exs. P91-P94.

There was also evidence that St. Jude's declining profits were not attributable to the possibility that Biosense's product was superior. For example, Dr. Gregory Engel, a physician at Sequoia, testified that there are pros and cons to each of the cardiac mapping systems and that neither system is superior to the other. Trial Tr. vol. IV [Docket No. 319] at 654:13-15; 656:12-18. Dr. Engel also testified that the cardiology group's founding physician continued to use the St. Jude system exclusively even when Biosense's product was available to him. Id. at 638:21-639:5.

In sum, the evidence on lost profits was not merely speculative and supports a reasonable inference that St. Jude's lost profits were attributable to de Castro's departure. The evidence

proved lost profits with the required degree of certainty.

Defendants also argue St. Jude is not entitled to recover lost profits from Biosense as a matter of law. Defendants contend damages for tortious interference with a contract are limited to damages that might have been recovered for the breach of contract itself, and damages for breach of a term employment contract are generally limited to replacement costs. Defs.' Mem. Supp. JMOL [Docket No. 307] at 9. However, Minnesota courts have allowed the recovery of lost profits for tortious conduct where the evidence sufficiently establishes such losses. See, e.g., H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1549 (8th Cir. 1989); Northland Merchandisers, Inc. v. Menard, No. C5-96-2177, 1997 WL 408051, at *3 (Minn. Ct. App. Jul. 22, 1997); see also Restatement (Second) of Torts § 912, cmt. d (1979) (allowing recovery lost profits provided sufficient proof exists).

**b. Replacement Costs**

Defendants argue the evidence was not sufficient for a reasonable jury to conclude that Bryan Coin replaced de Castro at Sequoia, because there was testimony that Coin's role at St. Jude was significantly different than de Castro's had been. However, there was also evidence that Coin was the best available replacement for de Castro's unique role and skill set. See, e.g., Trial Tr. vol. I at 146:23-150:15.

Defendants also argue St. Jude cannot claim as replacement costs expenses related to training and travel for George Crowell and Zach Umlauf, two individuals who did not replace de Castro for the remainder of his employment contract. St. Jude produced evidence that these costs were necessary for Crowell and Umlauf to maintain the business until Coin could relocate to replace de Castro. See, e.g., Trial Tr. vol. I at 143:16-146:22. Thus, the evidence supports the

jury's verdict for replacement costs.

**c. Attorney's Fees**

Defendants argue that St. Jude's failure to produce sufficient evidence of breach of contract damages from de Castro precludes any attorney's fees recovery from Biosense. As discussed above, St. Jude did introduce sufficient evidence of damages flowing from de Castro's breach of his employment agreement. Therefore, this argument also fails, and Defendants are not entitled to judgment as a matter of law.

**2. New Trial**

Defendants also seek a new trial, arguing the verdict is against the weight of the evidence, inadmissible evidence was admitted and admissible evidence was excluded, and the jury instructions were erroneous.

The decision whether to grant a new trial under Federal Rule of Civil Procedure 59(a) is committed to the discretion of the district court. Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). "A new trial is required only when necessary to avoid a miscarriage of justice." Gearin v. Wal-Mart Stores, Inc., 53 F.3d 216, 219 (8th Cir. 1994) (citation omitted). "While the standard for granting a new trial is less stringent than for judgment as a matter of law, a new trial shall be granted only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence." Maxwell v. Baker, Inc., 160 F.R.D. 580, 581 (D. Minn. 1995). "In determining whether a verdict is against the weight of the evidence, the trial court can . . . weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992) (quotation marks omitted). However, "a trial court may not grant a new trial simply because the trial court would

have found a verdict different from the one the jury found." Butler v. French, 83 F.3d 942, 944 (8th Cir. 1996). Rather, "[t]he court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred." Ryan v. McDonough Power Equip., Inc., 734 F.2d 385, 387 (8th Cir. 1984).

**a. Weight of the Evidence**

Defendants argue the verdict is against the weight of the evidence because St. Jude offered no admissible evidence that de Castro's departure from St. Jude caused St. Jude damages or that de Castro was actually replaced with Bryan Coin at St. Jude. Over the course of the five-day trial, St. Jude introduced witness testimony and numerous exhibits supporting its claim for damages, including the evidence discussed above. The jury's verdict is reasonable and not against the great weight of the evidence.

**b. Evidentiary Rulings**

Defendants' contentions that evidentiary rulings require a new trial are unavailing. Trial courts have "broad discretion in determining the relevancy and admissibility of evidence." United States v. Watson, 650 F.3d 1084, 1089 (8th Cir. 2011) (citation omitted). The trial transcript fully explicates the evidentiary rulings and underlying rationale. In summary, the evidence relating to Biosense's strategy of hiring de Castro to convert business at Sequoia from St. Jude to Biosense—which Defendants argue should have been excluded as irrelevant liability-related evidence—was relevant to show proof of causation and lost profit damages. Further, this line of evidence was more probative than prejudicial. In contrast, evidence relating to de Castro's subjective reasons for departing St. Jude was irrelevant to the issue of damages suffered

by St. Jude, and this evidence was properly excluded. Evidence of Biosense's sales information, which Defendants argue should have been excluded, was also relevant to causation and damages. See EFCO Corp. v. Symons Corp., 219 F.3d 734, 740 (8th Cir. 2000) (stating evidence of plaintiff's eroding revenues and defendant's increased revenues during period of misconduct contributed to inference that changes in companies' market shares was attributable to defendant's misconduct). The testimony of St. Jude's executives Rhett Harty and David Young was admitted as relevant to the issues of causation and damages. Finally, Trial Exhibits P22 and P23 were admissible exhibits based on St. Jude's actual sales data, and were relevant to the issue of lost profits. Accordingly, the Court affirms its evidentiary rulings and will not grant a new trial on this basis.

**c. Jury Instructions**

Defendants argue the jury instructions were clearly erroneous. A new trial may be ordered if the court erred in instructing the jury on the applicable law. T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn., 860 F. Supp. 640, 650 (D. Minn. 1994), vacated on other grounds, 66 F.3d 173 (8th Cir. 1995). A district court, however, has broad discretion in framing instructions and "need not give every proposed instruction as long as the court adequately presents the law and the issues to the jury." Fleming v. Harris, 39 F.3d 905, 907 (8th Cir. 1994). Moreover, the instructions are to be considered "in their entirety to determine whether, when read as a whole, the charge fairly and adequately submits the issues to the jury." Laubach v. Otis Elevator Co., 37 F.3d 427, 429 (8th Cir. 1994). "A single erroneous instruction will not necessarily require reversal." Id.

Defendants argue the Court erred by not instructing the jury that St. Jude was required to

prove that its replacement cost damages were reasonably forseeable by de Castro at the time he entered into the employment agreement with St. Jude. Defendants contend that some of the replacement costs sought by St. Jude—including costs to relocate a senior sales manager from Phoenix to California, costs to train another employee for several months after de Castro's departure, and travel expenses for another St. Jude employee to travel to hospitals where de Castro never worked for St. Jude—were not the direct, necessary, or natural effect of de Castro's breach of his term-of-years contract. Defendants thus argue these damages were consequential damages which were required to be reasonably forseeable by the parties at the time the employment contract was made.

Under Minnesota law, "the appropriate measure of damages for breach of contract is that amount which will place the plaintiff in the same situation as if the contract had been performed." Peters v. Mutual Benefit Life Ins. Co., 420 N.W.2d 908, 915 (Minn. Ct. App. 1988). Minnesota's model civil jury instruction for breach of contract damages instructs a jury "to determine the amount of money that will fairly and adequately compensate" a party "for damages caused by the breach of the contract." MN CIVJIG § 20.60.

Here, the Court gave the following instruction on replacement damages:

> In answering Question Number 1 on the Special Verdict Form, you are to determine what amount of damages, if any, will fairly and adequately compensate St. Jude for the costs St. Jude incurred in replacing Jose de Castro after the breach of his employment agreement. Such damages must have been actually and reasonably incurred by St. Jude. Such damages may include employee replacement costs or other expenses, and must have been incurred between March 6, 2012, and January 4, 2014. These costs do not include any expenses St. Jude would have incurred anyway, if de Castro had remained a St. Jude employee.

Trial Tr. vol. V [Docket No. 320] at 849:13-23. The Court's jury instruction comports with

Minnesota law on contract damages and closely parallels Minnesota's model civil jury instruction. Additionally, the Court's requirement that the replacement damages "must have been actually and reasonably incurred," eliminated the potential for the jury to include unnecessary or unreasonable costs when calculating replacement damages. Thus, the Court's jury instruction fairly and adequately instructed the jury on the law of replacement damages.

Defendants also argue the Court erred in instructing the jury that St. Jude could recover lost profits from Biosense. See Special Verdict Form (submitting issue of damages for lost profits to jury). However, as stated earlier, Minnesota courts allow the recovery of lost profits for tortious conduct where the evidence sufficiently establishes such losses. See, e.g., H.J., Inc., 867 F.2d at 1549; Northland Merchandisers, Inc., 1997 WL 408051, at *3; see also Restatement (Second) of Torts § 912, cmt. d (1979) (allowing recovery lost profits provided sufficient proof exists). Accordingly, the Court's submission of the issue of lost profits to the jury was a fair and adequate presentation of the law and does not warrant a new trial.

**B. St. Jude's Motion for Prejudgment Interest and Expert Fees**

St. Jude moves for an award of prejudgment interest of $4,514.62 on the judgment against de Castro, and $298,412.22 on the judgment against Biosense. St. Jude also requests that $29,701.65 in expert fee costs be added to the judgment against Biosense. Defendants oppose the requests, arguing St. Jude's interest calculations are excessive and that St. Jude is not entitled to recover its expert witness fees.

**1. Prejudgment Interest**

St. Jude argues that Minn. Stat. § 549.09 subd. 1 is authority for an award of interest on the entire amount of the judgments, and that the interest is computed from the time the case was commenced on March 9, 2012, to when final judgment was entered on July 21, 2014. Defendants contend St. Jude incorrectly calculated the interest on the judgments because: (a) interest on the special damages portion of the judgement against Biosense accrues from the time the special damages were incurred, rather than the time the action was commenced; (b) the interest against de Castro should be reduced based on an offer of settlement he made in January 2013; and (c) St. Jude is not entitled to interest on the attorney's fees damages that were awarded by the Court.

**a. Interest on Special Damages**

Defendants argue that the lost profit damages in the judgment against Biosense are special damages, and that interest on special damages does not begin accruing under Minn. Stat. § 549.09 subd. 1(b) until the time the special damages were incurred.

The relevant statutory language provides:

> (b) Except as otherwise provided by contract or allowed by law, preverdict . . . **interest on pecuniary damages shall be computed . . . from the time of the commencement of the action** . . . except as provided herein. . . . If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counteroffer within 30 days. **After that time**, interest on the judgment or award shall be calculated by the judge . . . **in the following manner.** The prevailing party shall receive interest on any judgment or award from the time of commencement of the action . . . , or **as to special damages from the time when special damages were incurred, if later**, until the time of verdict, award, or report only if the amount of its offer is closer to the judgment . . . than the amount of the opposing party's offer . . . .

Minn. Stat. § 549.09 subd. 1(b) (emphasis added).

In Marvin Lumber & Cedar Co. v. PPG Industries, Inc., 401 F.3d 901 (8th Cir. 2005), the Eighth Circuit specifically addressed the issue of whether interest on special damages under Minn. Stat. § 549.09 subd(1) should be calculated from the time the action was commenced or, alternatively, from the time the special damages were incurred. In determining how the Minnesota Supreme Court would read the plain language of § 549.09, the Eighth Circuit observed that the statute's reference to calculating interest from the time "'when special damages were incurred' applies only **after** one or more settlement offers have been made." Id. at 919 (quoting Minn. Stat. § 549.09 subd. (1)). Thus, the statute "is not ambiguous in its intention to allow preverdict interest on **all** pecuniary damages from the time the suit was filed, assuming no written settlement offers were made in the course of litigation." Id.; see also Tri State Grease & Tallow Co., Inc. v. BJB, LLC, No. A10-1560, 2011 WL 2518954, at *7 n.2 (Minn. Ct. App. June 27, 2011) ("Had the legislature intended prejudgment interest on all damages to run from the date that the damages were incurred, it could have easily have so stated."). This reading of the statute's plain language is consistent with the statute's dual purposes of providing full compensation to prevailing parties and promoting settlements. Marvin, 401 F.3d at 918.[2]

Defendants argue that awarding prejudgment interest on special damages not yet incurred would "punish unsuccessful litigants and discourage the vigorous defense of claims in a manner

[2] In Marvin, the Eighth Circuit acknowledged a case from the Minnesota Court of Appeals which stated, "Whether interest on the judgment accrues from the time the action is commenced or the time damages were incurred depends upon the nature of the damages." Id. at 919 (quoting Tyroll v. Private Label Chems., Inc., 493 N.W.2d 128, 132 (Minn. Ct. App. 1992)). However, the Eighth Circuit noted that this statement in Tyroll was based on a flawed textual analysis of Minn. Stat. § 549.09 subd. 1(b). See id.

that would call into question the statute's constitutional validity." Defs.' Mem. Opp'n [Docket No. 312] at 9-10 (citing dissent in Marvin, 401 F.3d at 923-24). Defendants contend this reading unconstitutionally intrudes upon a citizens right of access to the courts under the Minnesota and United States Constitutions, and would also violate the United States Constitution's Takings Clause. Id. (citing Minn. Const. art. 1, § 8; U.S. Const. amends. I, V).

"Because statutes are presumed constitutional, the challenging party must demonstrate that the statute is unconstitutional beyond a reasonable doubt." Schatz v. Interfaith Care Ctr., 811 N.W.2d 643, 657 (Minn. 2012). Defendants cite no cases holding that the plain language of Minn. Stat. § 549.09 subd. 1(b) violates the Minnesota or United States Constitutions, nor have they met the strict standard of demonstrating that the statute is unconstitutional beyond a reasonable doubt. Therefore, the Court will apply the clear language of the statute, and interest on St. Jude's lost profit damages will be computed "from the time of the commencement of the action" on March 9, 2012.

Under Minn. Stat. § 549.09 subd. 1(c)(2), the interest rate on judgments of more than $50,000 is 10%. Accordingly, St. Jude is entitled to prejudgment interest of $298,412.22 on its judgment against Biosense.[3]

---

[3]

| YEAR | AMOUNT | RATE | DAYS | TOTAL |
|---|---|---|---|---|
| 2012 | $1,260,651.46 | 10% | 297 (March 9, 2012 - Dec.31, 2012) | $102,579.52 |
| 2013 | $1,260,651.46 | 10% | 365 (Jan. 1, 2013 - Dec. 31, 2013) | $126,065.14 |
| 2014 | $1,260,651.46 | 10% | 202 (Jan. 1, 2014 - July 21, 2014) | $ 69,767.56 |
| | | | **GRAND TOTAL=** | **$298,412.22** |

**b. Interest Against de Castro**

The parties also dispute the amount and time period that should be used to calculate interest against de Castro. St. Jude contends interest applies to the entire $47,680.52 judgment and accrues from the time the case was commenced until the time the judgment was entered. Defendants argue de Castro made a valid settlement offer in January 2013 that operated to limit the amount and bracket the timeframe for which interest may accrue as provided in Minn. Stat. § 549.09 subd. 1(b).

The relevant portion of the statute provides that if a losing party's offer of settlement was closer to the judgment than the prevailing party's offer, "the prevailing party shall receive interest only on the amount of the settlement offer or the judgment . . . , whichever is less, and only from the time of commencement of the action . . . or as to special damages from when the special damages were incurred, if later, until the time the settlement offer was made." Minn. Stat. § 549.09 subd. 1(b). "Valid offers and counteroffers under section 549.09 must be in writing and must offer, in sufficiently clear and definite terms, to dispose completely the claims between the negotiating parties." Hodder v. Goodyear Tire & Rubber Co., 426 N.W.2d 826, 840 (Minn. 1988), cert. denied, 492 U.S. 926 (1989). The statute's purpose of promoting settlements "is best accomplished by offers which are straightforward and would in an effective and practical manner settle matters between the negotiating parties." Id. If a valid offer is not made, the losing party "must pay preverdict interest on the entire compensatory judgment." Id. at 841.

Here, de Castro made a written offer on January 29, 2013 for final judgment to be entered against him in the amount of $15,000 to "fully satisfy all of the monetary claims that [St. Jude] may have against de Castro." Bradford Decl., Aug. 8, 2014 [Docket No. 303] Ex. 2 ("Offer").

The Offer stated that it "shall not constitute an admission of liability with respect to any of Plaintiff's claims against de Castro, and shall resolve all of *Plaintiff's claims* against de Castro in their entirety." Id. (emphasis added). Defendants contend de Castro's Offer was to settle all his claims with St. Jude for $15,000, and this offer was closer to the $47,680.52 judgment than St. Jude's demand of $268,202.28. Thus, argue Defendants, interest only applies to the $15,000 offer amount, not the total judgment amount, and only accrues until the settlement was made, rather than when the judgment was entered.

At the time de Castro made the Offer, he and Biosense were asserting a claim for declaratory relief against St. Jude regarding the enforceability of de Castro's employment agreement. See Answer to First Am. Compl. [Docket No. 44] at 22 (stating "de Castro and Biosense seek the relief sought in their Complaint for Declaratory relief filed in the Superior Court of California . . . and which was removed by [St. Jude] . . . and then transferred to this Court (Court File No. 12-cv-01493 (ADM/AJB)").[4]

Upon receiving de Castro's Offer to settle St. Jude's claims against him, counsel for St. Jude wrote to Defendants' counsel "seeking some clarification" and requesting "Defendants' position about the purpose and effect of accepting the offer." Bradford Decl. Ex. 2. Specifically, St. Jude's counsel inquired whether de Castro was "prepared to admit the validity and enforceability of his [employment] Agreement," and whether the Offer would operate as a

[4] The transferred case referenced in Defendants' Answer to the First Amended Complaint had been voluntarily dismissed on September 7, 2012 because the claims in that case were "entirely duplicative" of the claims raised here. See Notice of Voluntary Dismissal, Sept. 7, 2012 (filed as Docket No. 38 in in Jose B. De Castro and Biosense Webster, Inc. v. St. Jude Medical S.C., Inc., No. 12-1493 ADM/AJB (D. Minn.)). However, in dismissing the transferred action, de Castro and Biosense stated they would "litigate their claims" in this action. See id.

judgment on the merits with respect to St. Jude's breach of contract claim against de Castro. Id. The record does not include a response from Defendants to this inquiry.

The Offer did not state in clear and sufficient terms a proposal to dispose of all claims between de Castro and St. Jude, because the Offer addressed only *St. Jude's* claims, and did not address the claim by *de Castro* for declaratory relief that de Castro was seeking in this case. Thus, the Offer was not an offer which qualifies under Minn. Stat. § 509.09, subd. 1(b), and interest accrues on the entire amount of the judgment against de Castro until the time the judgment was entered.

The parties agree that under Minn. Stat. § 549.09 subd. 1(c)(1), the interest rate on judgments of less than $50,000 is 4%. Accordingly, St. Jude is entitled to prejudgment interest of $4,514.62 on its judgment against de Castro.[5]

**c. Attorney's Fees Damages**

St. Jude's request for prejudgment interest against Biosense also includes interest on the attorney's fees award of $662,018.94 to compensate St. Jude for the attorney's fees it incurred to protect its contract rights. Biosense argues prejudgment interest on this amount is prohibited under Minn. Stat. § 549.09, subd. 1(b)(5), which provides that preverdict interest shall not be awarded on "that portion of any verdict, award, or report which is founded upon interest, or

[5]

| YEAR | AMOUNT | RATE | DAYS | TOTAL |
|---|---|---|---|---|
| 2012 | $47,680.52 | 4% | 297 (March 9, 2012 - Dec.31, 2012) | $1,551.90 |
| 2013 | $47,680.52 | 4% | 365 (Jan. 1, 2013 - Dec. 31, 2013) | $1,907.22 |
| 2014 | $47,680.52 | 4% | 202 (Jan. 1, 2014 - July 21, 2014) | $1,055.50 |
| | | | **GRAND TOTAL=** | **$4,514.62** |

costs, disbursements, attorney fees, or other similar items *added by the court.*" Minn. Stat. § 549.09, subd. 1(b)(5) (emphasis added). Biosense argues the attorney's fees award was added by the Court and thus is not subject to prejudgment interest.

The attorney's fees award is one portion of the judgment for compensatory damages based on Biosense's tortious interference. See Attorney's Fees Damages Order at 9 ("St. Jude is hereby awarded $662,018.94 as damages under the third-party litigation exception to the American rule."). To streamline the trial, the parties agreed that the Court, rather than the jury, would serve as the fact-finder for the attorney's fees portion of St. Jude's compensatory damages. This did not cause the attorney's fees awarded to St. Jude to be "added by the court" to the judgment; the attorney's fees were part of the damages constituting the judgment. See Seaway Port Auth. of Duluth v. Midland Ins. Co., 430 N.W.2d 242, 252 (Minn. Ct. App. 1988) (affirming prejudgment interest on attorney's fees awarded as compensatory damages because fees were "the subject matter of the judgment itself"); Kraus-Anderson Constr. Co. v. Transp. Ins. Co., No. A10-698, 2011WL 1364251, at *13 (Minn. Ct. App. Apr. 12, 2011) (holding Minn. Stat. § 549.09 subd. 1(b)(5) does not prohibit prejudgment interest on judgment for attorney's fees awarded by court where such fees were recoverable as damages). Thus, the attorney's fees portion of the judgment against Biosense is subject to prejudgment interest.

**2. Expert Fees**

St. Jude requests an award of $29,701.65 in expert fees paid to Sam Hanson. Hanson generated an expert report and opinion that was submitted to the Court in support of St. Jude's claim for attorneys' fees damages. Hanson did not testify at trial or in a deposition. Biosense opposes the request, arguing there is no statutory or contractual authority that would permit St.

Jude to recover its expert fees.

"[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Under 28 U.S.C. § 1821 (a) and (b), a prevailing litigant may recover $40 per day for a witness' attendance in federal court or at a deposition.[6] The daily fee limit set forth in § 1821(b) applies to expert witnesses, and the Court may not exceed this limit absent express statutory authority to the contrary. Crawford Fitting, 482 U.S. at 442; Sphere Drake Ins. PLC v. Trisko, 66 F. Supp. 2d 1088, 1090-91 (D. Minn. 1999); Martino v. United States, No. Civ. 95-748, 2002 WL 459069, at *2 (D. Minn. March 20, 2002).

St. Jude has identified no statutory authorization that would permit it to recover fees in excess of the $40 per day limit specified in § 1821(b). Additionally, because Hanson did not testify at trial or in a deposition, St. Jude is not entitled to the witness attendance fee under the

---

[6] Section 1821(a) and (b) provide in relevant part:

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.
> . . .
>
> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821.

statute. Thus, St. Jude's request for expert fees is denied in its entirety.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Biosense Webster, Inc., Johnson & Johnson, and Jose B. de Castro's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial [Docket No. 305] is **DENIED**; and

2. Plaintiff St. Jude Medical, S.C., Inc.'s Motion for Award of Prejudgment Interest and Taxation of Expert Fee Costs [Docket No. 300] is **GRANTED** in part and **DENIED** in part as follows:

   a. Plaintiff is awarded $298,412.22 in prejudgment interest against Defendants Biosense Webster, Inc. and Johnson & Johnson.

   b. Plaintiff is awarded $4,514.62 in prejudgment interest against Defendant Jose B. de Castro.

   c. Plaintiff's request for taxation of expert fee costs is denied in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 24, 2014.